40486. CITY OF EAST POINT v. GRAYSON.

Decided March 20, 1964.

*Ezra E. Phillips,* for plaintiff in error.
*Sidney T. Schell,* contra.

BELL, Presiding Judge. The trial judge in his judgment of reversal specifically remanded the case to the mayor and council of the City of East Point with directions that Grayson be served with a written charge stating "the offense, offenses, or shortcomings charged against him" prior to any further hearing on the matter. As we view it, the directions included in the trial court's judgment are indispensably germane to any legal disposition of the cause which may be adverse to Grayson.

We shall affirm the judgment of reversal in toto.

■ By mandate of its charter the City of East Point maintains a system designed to stimulate and reward the faithful

career services of its employees. The plan is analogous in many respects to systems operated by numerous other governmental entities which are most often styled "Civil Service." The city's charter provides for tenure and retirement benefits, and these may be supplemented by other employees' morale and welfare programs such as a group insurance plan. Provision is made for a category of "classified" personnel who by the charter's explicit language are entitled *contractually* to enjoy a term of office which "shall continue during good behavior and efficient service." Sec. 41, Ga. Laws 1957, pp. 2429-2501. Obviously, an employee in this "classified" service has a vested contractual interest in the tenure provisions of his employment and in the retirement benefits which that tenure foretells. These vested contractual rights may not be taken from him in an indiscriminate or arbitrary manner. It is the duty of the courts, in an appropriate case, to protect those rights.

Here, it is undisputed that under the terms of the charter as amended James Roy Grayson was a "classified" employee of the city and held a permanent appointment. In this status Grayson's term of office or contract of employment was continuous "during good behavior and efficient service." He was employed on January 15, 1952, as superintendent of the city's Parks Department and continued in that capacity until discharged following the hearing now under review.

The action first discharging Grayson was taken on September 8, 1959, by the adoption by the mayor and council of a resolution which stated that, "due to Mr. J. R. Grayson's inability to operate the Parks Department as it should be operated over a period of years, that he be relieved of his duties as Superintendent of the Parks Department." This action was subject, however, to Grayson's pursuing his statutory right to request the mayor and council to grant him a hearing. Grayson made the request. By this act, he was entitled to the hearing as a matter of law under the city's charter.

On numerous occasions during these proceedings, including his initial request for a hearing, Grayson demanded that he be given a list of the specific charges upon which his dismissal was based. These demands for particulars purportedly were answered by

delivery to him on September 17, 1959, of a copy of a resolution adopted on September 16, 1959, by the mayor and council which stated very generally that, "Mr. Grayson's conduct in handling the Water Safety Program at the Randall Street Pool on August 25th has been such that his usefulness to the City has come to an end." It was on this general and vague charge that Grayson was forced to defend and on it that the hearing was founded.

The decision of the council following the conclusion of the hearing was simply that "the action of this Council discharging Mr. Grayson on September 8th, 1959, be upheld."

A simple comparing of the council's decision of September 8, 1959 (supra), with the so-called charges upon which the hearing was based quickly discloses that the council's judgment is neither consistent with the charge nor based upon it. How can there be any compatibility between the words, "inability to operate the Parks Department as it should be operated *over a period of years*," which was the decision, and the charge limiting the hearing to "Mr. Grayson's conduct in handling the Water Safety Program . . . on August 25th"? Can it be said that *one day's conduct* is sufficient to show *inability over a period of years?* Was it possible for him to defend *years* of his conduct when charged only vaguely and generally as to his activity on one particular day? There can be only one logical answer.

Even if the charge of misconduct served on Grayson had been sufficient (which it is not), the disparity between the decision and the charge would demand a reversal as it displays a capricious disregard of the employee's statutory rights as well as his vested contractual interest in continuing his employment. Arbitrary action of this variety is precluded by the city's charter as well as by the general law governing contractual obligations.

■ We turn now to the question of the sufficiency of the notice furnished Grayson prior to the hearing held to consider his discharge and removal from the city's employment.

There are no judicial precedents dealing with the point as applied to the charter provisions of the City of East Point. There is, however, one persuasive decision written by Judge Hall of this court covering the precise question as it applies to another statute having similar motives, i.e., one designed to stimulate and

reward the faithful career services of employees. See *Scott v. Undercofler,* 108 Ga. App. 460 (133 SE2d 444), and cases cited therein.

Section 47 of the charter provisions of the city as amended provides that "no one shall be removed, discharged or disciplined except for good and sufficient cause." Section 51 of the charter declares in a general way a number of things, any one of which is necessary to constitute "good and sufficient cause" adequate to authorize a discharge. The section reads: "All officers and employees of said city shall be subject to discharge or removal from their connection with the city for drunkenness, dishonesty, failure to perform their duties, immoral or indecent conduct, soliciting votes in city elections, oppressive or abusive conduct, or oppressive or abusive use of official position or power, or other conduct unbecoming their station, office or position."

The charter as amended is vague and indefinite insofar as it fails to particularize the essential details of charges of notices to be served on employees who are threatened with discharge or removal. There are, however, references to requirements of a "writing" (§ 49), of "written charges" (§ 47), of a "brief statement of the question or matter to be heard" (§ 62), and to "hearings" (§§ 47, 54, 62, 63, 64, and others inferentially). These references are adequate, when viewed with the charter provisions as a whole, to display clearly the legislative intent that no "classified" personnel of permanent status are to be discharged by mere fancy or antipathy, and never finally, if the accused wishes it, without an opportunity to be heard and to refute, if he can, the charges lodged against him. It is equally apparent that this legislative intent would be thwarted if hearings are sanctioned when they are conducted on charges too vague and general to permit the accused a fair opportunity to present his defense. To accord this opportunity, it is essential to state in the charges specifications of facts. It is not enough to express mere vagaries or generalities. By this it is not held that charges of this kind must be stated with the precision of an indictment nor with the certainty of a pleading. The holding is that this type of charge must be sufficiently specific and detailed to convey to the employee the substantial nature of the

charge without requiring speculation on his part as to the precise complaint he must answer. The charge must be detailed sufficiently to show that none of the employee's constitutional, statutory, or contractual rights are violated and that proof of the charge would warrant his dismissal as a matter of law.

The charge which Grayson was forced to defend, i.e., his "conduct in handling the Water Safety Program at the Randall Street pool on August 25th has been such that his usefulness to the city has come to an end" does not fulfill this criterion.

■ The trial court did not err in overruling the city's motion to dismiss the certiorari.

■ Nothing said in this opinion is to be construed as implying that the evidence presented on the hearing would not have authorized Grayson's discharge and removal from the city's service. We make no ruling on the sufficiency of the evidence as the trial judge's judgment under review does not include the problem. The holding in Division 2 of this opinion is limited to the fact that the notice of the charges lodged against Grayson was defective when measured by the requisite standards and the proceedings had on the defective notice were a nullity.

*Judgment affirmed. Jordan and Eberhardt, JJ., concur.*