Thomas HARRISON

v.

HOUSING AUTHORITY OF the CITY OF COLLEGE PARK et al.

Civ. A. No. C77–406A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Feb. 6, 1978.

Claudia Tesoro, Myron Kramer, Atlanta Legal Aid, Atlanta, Ga., for plaintiff.

Nancy Merrill Hunt, Atlanta, Ga., Virginia A. Bonner, Decatur, Ga., for defendants.

## ORDER

MURPHY, District Judge.

This case concerns the allegedly constitutionally deficient procedures utilized in effectuating plaintiff's termination as an employee of the Housing Authority of the City of College Park ("Authority"). Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(3) and (4). Pending before the court are cross motions for summary judgment.

Plaintiff had been a full-time employee of the Authority until Monday, October 4, 1976. On October 5, 1976, plaintiff began serving two weeks in jail. Plaintiff's employment was terminated by the Authority at some point during this two weeks.

On October 27, 1976, plaintiff and his attorney met with defendant Mary Nix, Executive Director of the Housing Authority, to discuss the termination. Defendant Nix declined to reinstate the plaintiff and a "notice of appeal" was filed. The appeal was to be considered at the December 21, 1976 meeting of the Board of Commissioners of the Housing Authority, but no business was conducted at that meeting because a quorum was not present. Plaintiff was notified by a letter of February 14, 1977 that the Board had met on February 8, 1977 and affirmed the dismissal.

1. The first issue before the Court is whether plaintiff had a sufficient property interest in his continued employment to entitle him to the applicable due process rights of notice and a hearing concerning his termination. "A person's interest in a benefit is a 'property' interest for due process purposes if there are . . . rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). A property interest is created and defined by a source independent of the Constitution. Such sources include state laws, ordinances or an implied contract which secure certain benefits and support claims of entitlement to those benefits. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Plaintiff seeks to establish the legitimacy of his claim of entitlement by reference to the Authority's Personnel Policy. This policy provides in relevant part:

Any employee who gives unsatisfactory service or who is guilty of violation of regulations shall be subject to immediate dismissal. . . . Due consideration

will be given all facts in any given situation. § II–C–2.

The Policy then provides procedures to contest a dismissal.

Despite plaintiff's protestations to the contrary, this language does not create a merit system for the Housing Authority under which an employee may only be discharged for cause. The Policy permits "immediate dismissal" for "unsatisfactory service" and creates no right to continued employment. A claim of entitlement entails more than a mere need or desire for continued employment. A unilateral expectation is not enough. *Board of Regents v. Roth,* supra, 408 U.S. at 577, 92 S.Ct. 2701. The Policy creates no rights to or mutual expectation of continued employment. The subjective standards and "immediate dismissal" make this clear.

Plaintiff relies upon the Georgia case law in support of his contentions that a property interest had arisen in his job. The cases cited are clearly inapposite, however. *Deason v. DeKalb Merit Council,* 110 Ga.App. 244, 138 S.E.2d 183 (1964) and *Scott v. Undercofler,* 108 Ga.App. 460, 133 S.E.2d 444 (1963) concerned employees covered by the Georgia Merit System Law. *City of East Point v. Grayson,* 109 Ga.App. 413, 136 S.E.2d 434 (1964) concerned a "Civil Service"-type system which provided "vested contractual interest" in the tenure provisions of the contract for "classified" personnel. Vested contractual rights may not be arbitrarily removed in Georgia, 109 Ga.App. at 416, 136 S.E.2d 434, but the Housing Authority's Personnel Policy in the case sub judice does not create such rights. The Georgia case law provides no support for the proposition that plaintiff was entitled to due process rights upon his job termination.

■ Plaintiff contends an alternative source for his claim of entitlement is the HUD Low Rent Housing Administration of Program Handbook. The Handbook provides, in relevant part:

Each local agency shall formally adopt and comply with a statement of personnel policies comparable with pertinent local public practices.

The Handbook proceeds to list areas to be covered and specifically includes "the rights of the local agency and the employee in connection with the termination of services". Handbook RHM 7401.1, Ch. 5 § 1(1).

This Handbook is not mandatory: "the various 'handbooks' and 'booklets' issued by HUD contain mere 'instructions', 'technical suggestions', and 'items for consideration' ". *Thorpe v. Housing Authority,* 393 U.S. 268, 275, 89 S.Ct. 518, 522, 21 L.Ed.2d 474 (1969). The precatory nature of HUD handbooks obviates arguments that they could give rise to a claim of entitlement.

The obligations arising under this handbook require only that housing authority personnel policy be "comparable" to "local public practice". The College Park Housing Authority has a stipulated termination procedure which may be held to fall within the wide boundaries of comparability. Furthermore, plaintiff has attempted to demonstrate a claim of entitlement by contending the local public practice entails a claim of entitlement. Plaintiff contends the relevant practice in the City of College Park is the City Charter-established Civil Service System. Plaintiff's position in the Housing Authority could not be termed equivalent to a City Civil Service job by any twist of reasoning. The mere fact that the City of College Park has some employees who may have a claim of entitlement to their present jobs does not mean all Housing Authority personnel have a property interest in their jobs—HUD handbooks notwithstanding.

Plaintiff contends another possible source for the claim of entitlement is the Annual Contribution Contract between the Department of Housing and Urban Development and the Housing Authority. Like the HUD Handbook, this contract provides for a "statement of personnel policies comparable with pertinent local public practice." Part II, Section 307(A). Unlike the HUD Handbook, the list of personnel policies does not include rights of employees in the termination of their services. The contract creates no procedural rights for plaintiff as to termination and necessarily cannot provide a basis for a property interest in his lost job.

2. For the reasons noted immediately above, the plaintiff cannot claim to be an intended beneficiary of the Annual Contributions Contract. The contract does not create an obligation upon the Authority to conform its personnel policies as to termination with local public practice. Only an "intended" beneficiary may base a cause of action upon a contract to which he is not a party. Restatement of Contracts 2d §§ 133, 147. The relevant Restatement method to identify an intended beneficiary requires an indication that the promisee intends to give the beneficiary the benefit of the promised performance. *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 362 (5th Cir. 1977). Not only is there no such indication in the contract, but the omission of the obligation to conform termination procedures clearly indicates the absence of such an intent. See also, *Harlib v. Lynn*, 511 F.2d 51, 56 (7th Cir. 1975).

3. Plaintiff seeks to establish a private cause of action based upon the aforementioned HUD Handbook. As noted above, the Supreme Court has indicated these handbooks are merely advisory and not mandatory. *Thorpe*, supra, 393 U.S. at 275, 89 S.Ct. 518.

Even if this handbook were construed to be mandatory, it is clear no private cause of action could be implied from it. Congress, not the administrative agencies, determines the most effective manner to enforce legislative enactments. If a cause of action is to be implied, it is done so only where it is deemed consistent with the underlying Congressional policy. Plaintiff here points to no Congressional policy: in fact, he can point to no Congressional act. *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) concerns itself with whether a private remedy is implicit in a statute. *Cort* does not authorize an implied cause of action from an agency regulation, and certainly not from an agency handbook.

4. Plaintiff has included a request for payment of sick leave time to which he was entitled but did not receive. According to the affidavit of Mary Nix, defendant has one hour of uncompensated accrued sick leave time. Plaintiff has not filed an opposing affidavit as would be required to contest this fact. *Golden Oil Co. Inc. v. Exxon Company, U.S.A.*, 543 F.2d 548, 551 (5th Cir. 1976). One hour of sick leave will not continue this litigation in federal court.

5. Plaintiff has prosecuted his claims with articulate and sometimes innovative explanations. Unfortunately, he seeks a court acceptance of standards rejected by a majority of the Supreme Court in *Bishop*, supra. The relevant inquiry is not "whether it was objectively reasonable for the employee to believe he could rely on continued employment." 426 U.S. at 353, 96 S.Ct. at 2082 (Brennan, J.) (dissenting opinion). The issue is whether state law recognizes a property interest in the job in question. In the case at bar, it seems clear Georgia law does not.

The decision of the College Park Housing Authority may be harsh, unfair, and erroneous, but "federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. . . . The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop*, supra, 426 U.S. at 349–50, 96 S.Ct. at 2080. The court must be guided by the fact that court-ordered reinstatement of an employee for failure to receive a pretermination hearing is rare. 426 U.S. at 349 n.14, 96 S.Ct. 2074.

6. Accordingly, plaintiff's motion for summary judgment is DENIED. Defendant's motion for summary judgment is GRANTED.