A97A0316. MAXWELL v. MAYOR & ALDERMEN OF
THE CITY OF SAVANNAH et al.
A97A0317. GELLATLY v. MAXWELL.
(487 SE2d 478)

RUFFIN, Judge.

James Maxwell, a former police officer for the City of Savannah ("the City"), sued, among others, the Mayor and Aldermen as the City's governing body, and the City's Chief of Police, David Gellatly. In his complaint, Maxwell alleged, inter alia, that the defendants wrongfully terminated him from his employment as a police officer and that Gellatly defamed him in connection with the termination. Maxwell alleged that these actions constituted violations of his due process rights to property and liberty under 42 USC § 1983 and state law. These appeals follow the trial court's order disposing of the defendants' motion for summary judgment. In Case No. A97A0316, Maxwell appeals the trial court's grant of summary judgment against him on his § 1983 claims, and in Case No. A97A0317, Gellatly appeals the trial court's denial of his motion on Maxwell's defamation claim. For reasons which follow, we affirm in part and reverse in part the trial court's judgment in Case No. A97A0316, and we affirm the trial court in Case No. A97A0317.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." (Emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed in a light most favorable to Maxwell, as the respondent to the defendants' motion, the record shows that in 1992 Maxwell was the subject of a federal investigation involving illegal drug activity. Maxwell was subsequently charged in a criminal indictment with conspiracy to possess with intent to distribute and conspiracy to distribute a controlled substance. Following Maxwell's arrest, Gellatly

immediately terminated his employment with the police department.

The termination notice, which Gellatly issued to Maxwell on May 22, 1992, provided that "[e]ffective 5-26-92, your employment with the City of Savannah is terminated for . . . '[c]onduct unbecoming of an officer.' " The notice further provided that "[w]ithin 24 hours following suspension prior to dismissal, you may respond in a written appeal to the superior of the supervisor who initiated the termination action if you feel the action is unjustified." Finally, the notice informed Maxwell that he had a right to initiate an appeal to the Civil Service Board by filing a notice of appeal within ten days from his receipt of the termination notice. Despite these appeal provisions, and others contained in an employee handbook and the department's Standard Operating Procedures, Maxwell did not appeal his termination. A subsequent trial on the charges against Maxwell resulted in a mistrial, and the indictment was eventually dismissed with prejudice.

In the instant complaint, Maxwell alleged that his termination was in violation of the City's employee handbook and Standard Operating Procedures which were provided to him during his employment. A page from the employee handbook attached to Maxwell's affidavit provides that "[t]he Rules and Regulations provide that department heads may take certain disciplinary action against employees whose conduct or performance is not satisfactory. This action may take the form of a reprimand, demotion, suspension, or dismissal for good cause. . . ." The Standard Operating Procedures attached to Maxwell's affidavit provide that "[f]inal departmental disciplinary authority and responsibility rests with the Chief of Police. For disciplinary purposes, the Chief of Police has authority to . . . dismiss the employee from the Department, subject to review by the City Manager." Maxwell contends that because he could be terminated only "for cause," he had a protected property interest in continued employment which could not be terminated without due process. In granting the defendants summary judgment, the trial court found that because "[t]here is no statement in any of the documents produced that an employee of the police department may *only* be fired 'for cause[,]' " they did "not confer upon [Maxwell] a legitimate claim of entitlement to continued employment with the police department." (Emphasis in original.)

### Case No. A97A0316

1. Maxwell asserts that the trial court erred in granting summary judgment on his § 1983 property claim because he had a property interest in continued employment and because it is an "essential princip[le] of due process that such a property right shall not be

impinged without affording notice and appropriate hearing *prior to discharge.*" Although we agree with Maxwell that the trial court erred in concluding that he did not have a protected property interest in continued employment, we nevertheless affirm the decision because Police Chief Gellatly is entitled to qualified immunity against this claim and there is no evidence establishing the City's liability.

42 USC § 1983 provides a cause of action to an individual who has been deprived of a property right by a government official without due process. See 42 USC § 1983; *Atlanta City School Dist. v. Dowling*, 266 Ga. 217, 218 (466 SE2d 588) (1996). "Under Georgia law a public employee has a property interest in her job whenever she may only be dismissed for cause. This interest is not dependent upon the presence of the specific words 'for cause,' as long as whatever provisions apply are meant to be analogous to allowing termination only for cause. The relevant inquiry is into the expectations of the parties involved." (Citations and punctuation omitted.) *Peterson v. Atlanta Housing Auth.*, 998 F2d 904, 914 (11th Cir. 1993).

The defendants in this case have presented no evidence showing that Maxwell was an employee at will. Rather, the only evidence cited shows that Maxwell may be dismissed for "good cause." The trial court's reliance on the fact that the handbook did not state that Maxwell "may *only* be fired 'for cause' " ignores the rule that on summary judgment the evidence is to be construed in a light most favorable to the nonmoving party. See *Lau's Corp.*, supra. Viewing the handbook provision in this light, and in the absence of evidence to the contrary, we find that Maxwell could be dismissed only for cause. Accordingly, contrary to the trial court's order, we find that Maxwell did have a property interest sufficient to support a claim under 42 USC § 1983. See *Peterson*, supra.

Despite this finding, however, we conclude that Gellatly was immune from the § 1983 claim in this case. Gellatly's qualified immunity defense is governed by federal law. *Forney v. Purvis*, 190 Ga. App. 192, 195 (2) (378 SE2d 470) (1989). Citing federal law, this Court has recognized that "[g]overnment officials performing discretionary functions are granted a qualified immunity shielding them from imposition of personal liability pursuant to 42 USC § 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." (Citations and punctuation omitted.) *Thomas v. Holt*, 221 Ga. App. 345, 347-348 (1) (471 SE2d 300) (1996). " 'Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit. (Cit.) . . . For the law to be

clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that "what he is doing" violates federal law. (Cit.)' [Cit.]" Id. at 348.

Under a two-part analysis applied by the Eleventh Circuit, a defendant public official asserting immunity must show that " 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.' . . . Once the defendant public official satisfies his burden[,] . . . the burden shifts to the plaintiff to show lack of good faith on the defendant's part. The burden is met by proof demonstrating that the defendant public official's actions 'violated clearly established constitutional laws.' [Cit.]" *Stough v. Gallagher*, 967 F2d 1523, 1526 (11th Cir. 1992).

It is clear in this case that Gellatly was acting within the scope of his discretionary authority when he dismissed Maxwell. Gellatly's burden was met "by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." (Citation and punctuation omitted.) *Sims v. Metropolitan Dade County*, 972 F2d 1230, 1236 (11th Cir. 1992). It is undisputed that Gellatly was the Chief of Police at the time he dismissed Maxwell and the Standard Operation Procedures attached to Maxwell's affidavit clearly state that "[f]inal departmental disciplinary authority and responsibility," which includes the authority to dismiss an employee, rests with the Chief of Police.

Having decided that Gellatly met his initial burden, we must determine whether Maxwell has shown his dismissal "violated clearly established constitutional law." *Stough*, supra. Although we concluded above that Maxwell had a property interest in his employment with the police department, to establish a cause of action under § 1983, Maxwell must also show that Gellatly deprived him of that interest without due process. See 42 USC § 1983; *McKinney v. Pate*, 20 F3d 1550, 1555-1556 (11th Cir. 1994). Accordingly, the appropriate question here is whether, at the time Maxwell was dismissed, the law concerning due process was sufficiently developed in such a concrete and factually defined context to make it obvious to all reasonable government actors in Gellatly's place that what he was doing violated federal law. See *Thomas*, supra.

In *McKinney*, the Eleventh Circuit held that "a procedural due process violation is not complete 'unless and until the State fails to provide due process.' [Cit.] In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable

under section 1983 arise." *McKinney*, supra at 1557. Although a tenured employee is entitled to a pretermination hearing, "[t]hat hearing is not a mini-trial and 'need not definitely resolve the propriety of the discharge. It should be an initial check against mistaken decisions — essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.' [Cit.]" Id. at 1561. Furthermore, as stated above, even if an employee suffers a procedural deprivation at a termination hearing, "he has not suffered a *violation* of his procedural due process rights unless and until the [government actor] refuses to make available a means to remedy the deprivation." (Emphasis in original.) Id. at 1563.

In this case, Maxwell has not met his burden of showing Gellatly's actions clearly violated the above due process standards. First, the record shows that Maxwell was notified of his rights to a pretermination hearing. The notice of termination issued May 22, 1992, provided that it was "[e]ffective 5-26-92." In the interim, Maxwell could have taken advantage of the appeal process contained in the termination notice and of the grievance procedures provided in the employee handbook. Even if these procedures were deficient, Maxwell had the option of pursuing the post-deprivation remedy of appealing to the Civil Service Board. Considering the availability of these pre- and post-termination remedies, and Maxwell's failure to present authority showing these remedies deprived him of due process, we cannot say that it must have been obvious to all reasonable government actors in Gellatly's place that terminating Maxwell under the above procedures violated federal law. *Thomas*, supra at 348. Under these circumstances, Gellatly is immune from Maxwell's § 1983 property claim.

2. With regard to the Mayor and Aldermen, the complaint alleges that they were sued as "the governing body of the City of Savannah" and that Maxwell's wrongful termination "was approved and ratified by [these] defendants. . . ." However, the only evidence of record shows that, although subject to review by the city manager, final disciplinary authority and the decision to terminate Maxwell rested solely with Police Chief Gellatly. Furthermore, Maxwell stated in his affidavit that the "hand-book promulgated by [the City]" indicated that he could be terminated only for good cause shown. This evidence not only shows that the City had no part in Maxwell's termination, but also that it was the City's policy that he could be terminated only for cause. Maxwell cannot rest on his pleadings alleging that the City ratified his wrongful termination. See *Lau's Corp.*, supra. Because he failed to point to any evidence giving rise to a triable issue on this claim, summary judgment was proper. See *Gwinnett County v. King*, 218 Ga. App. 800, 802 (3) (463 SE2d 511) (1995).

3. Maxwell also asserts that the trial court erred in granting summary judgment in favor of Gellatly on his § 1983 claim for deprivation of his liberty interest without due process. According to Maxwell, Gellatly made defamatory statements to third parties in connection with his termination that deprived him of his good name and reputation without due process in violation of 42 USC § 1983. Maxwell thus asserts that the trial court erred in granting Gellatly summary judgment on this claim. We agree.

Federal law recognizes the cause of action asserted here. "Under federal law, a plaintiff can recover for a deprivation of reputational liberty upon proof of the following elements: '(1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for employee name clearing.' *Buxton v. City of Plant City, Fla.*, 871 F2d 1037, 1042-43 (11th Cir. 1989)." *Duck v. Jacobs*, 739 FSupp. 1545, 1551 (S.D. Ga. 1990). "If at trial [Maxwell] prove[s] the above six elements, [he] will be entitled to prevail; [his] federal constitutional claims are not restricted by the specific features of Georgia's state defamation law. [Cit.]" Id. at 1551.

In this case, Maxwell alleged that Gellatly published defamatory remarks in connection with his discharge to the Georgia Peace Officer Standards & Training Council ("POST") and to Leonard Small, a local pastor. The record contains a letter from POST to Maxwell in which it informed him that his certification as a peace officer was revoked on the ground that he was " 'dismissed from [the] Savannah Police Department for Conduct Unbecoming an Officer.' " The record further contains Small's affidavit in which he personally witnessed Gellatly make statements on the television in which Gellatly "wrongfully imputed a crime to James Maxwell."

Gellatly contends that these statements are insufficient to support Maxwell's § 1983 claim for several reasons. Gellatly argues that the POST letter does not show that he was the individual who informed POST that Maxwell was dismissed for conduct unbecoming an officer. We agree. There is nothing in the letter, which is the only evidence cited to support this claim, which indicates Gellatly was the source of the information. Accordingly, Maxwell has failed to meet his burden of pointing to evidence showing that Gellatly publicized the allegedly defamatory statement.

The same is not true with regard to the statements Gellatly allegedly made on television. Small's affidavit shows that Gellatly made allegedly false and stigmatizing statements about Maxwell, and there is no evidence that Maxwell was given any meaningful opportunity to clear his name. Although the record shows that Maxwell was entitled to post-deprivation appeals concerning his employment termination, there is no evidence showing he could have pur-

sued these appeals after Gellatly's televised statements. Moreover, considering the fact that the statements were televised, it is unclear whether such appeals could have provided a "meaningful opportunity" for name clearing.

Gellatly's contention that the statements did not attend Maxwell's discharge is also without merit. Viewing Small's affidavit in a light most favorable to Maxwell, we find it shows the statements were made during media coverage of the termination. Gellatly has cited no authority showing such statements cannot be considered attendant to the termination, and we believe that the issue of whether the statements actually attended Maxwell's termination is properly left for the jury or factfinder to decide. Although Gellatly also argues that Maxwell has presented no evidence that the statements hampered his ability to secure employment, neither *Duck* nor *Buxton* requires that as an element of the cause of action, and Gellatly has cited no authority to the contrary.

Finally, we note that although Gellatly argued below that he was entitled to qualified immunity against Maxwell's § 1983 wrongful discharge claim, he made no such argument below concerning Maxwell's § 1983 claim that he was wrongfully deprived of his liberty interest. Accordingly, although Gellatly argues on appeal that he is entitled to immunity on this claim, "[a]s grounds which may be considered on appeal are limited to those which were urged before the trial court, we will not review this issue." (Citations and punctuation omitted.) *Kannady v. State Farm &c. Ins. Co.*, 214 Ga. App. 492, 495 (5) (448 SE2d 374) (1994).

### Case No. A97A0317

4. Gellatly asserts that the trial court erred in denying him summary judgment on Maxwell's state law defamation claim because (1) his statements constituted expressions of opinion, (2) Maxwell was a public official and has failed to establish actual malice, and (3) Gellatly is protected by official immunity. The record shows, however, that although Gellatly moved for summary judgment on Maxwell's defamation claim, the motion was based solely on the argument that the claim was barred by the statute of limitation. Because Gellatly did not move for summary judgment on these grounds below, we will not consider them on appeal. Id.

*Judgment affirmed in part and reversed in part in Case No. A97A0316. Judgment affirmed in Case No. A97A0317. Birdsong, P. J., and Eldridge, J., concur.*

712

Before Judge Mikell.

*Novit, Scarminach & Williams, Dale E. Akins, Billy E. Moore,* for Maxwell.

*Oliver, Maner & Gray, Patrick T. O'Connor, David S. Gruskin,* for Gellatly.

*Wiseman, Blackburn & Futrell, James B. Blackburn, Abda L. Quillian,* for Mayor & Aldermen of the City of Savannah.