A00A0958, A00A1530. DᴇCLUE v. CITY OF CLAYTON (two cases).

(540 SE2d 675)

JOHNSON, Chief Judge.

The City of Clayton fired Jeffrey DeClue from his position as Superintendent of the City's Department of Water and Wastewater Treatment. DeClue sued the City, alleging that the City violated his due process rights by changing its employment policies without giving him notice and a hearing and also by firing him without providing notice and a hearing. He further alleged that the City unconstitutionally impaired his employment contract rights by adopting and applying the new policies to him.

Both parties moved for summary judgment on the due process claim. The trial court granted the City's motion and denied DeClue's motion. DeClue also filed a motion for summary judgment on the impairment of contract claim, which the trial court denied. In Case No. A00A0958, DeClue appeals from these orders.

While the appeal in Case No. A00A0958 was pending, the City moved for summary judgment on DeClue's impairment of contract claim. The trial court granted the City's motion. In Case No. A00A1530, DeClue appeals from that order. Because the cases are related, they have been consolidated on appeal.

The following facts are relevant to these appeals. The City hired DeClue in 1987 for an indefinite period of time and with no written contract. At the time he was hired and throughout his employment, the City had written personnel policies in place. Although the parties have not introduced copies of the policies which were in effect in 1987, they both rely upon the City's 1992 personnel manual as containing the policies in effect from the date of DeClue's hiring until at least 1997.

The City's 1992 personnel manual provides that certain specified conduct by employees is cause for disciplinary action. Prohibited conduct includes, for example, negligence or inefficiency in performing job duties, unfitness, insubordination, absenteeism or tardiness, theft of City property, and alcohol or drug use while on duty. The manual sets out five types of progressively severe discipline and requires that employees be given notice prior to the effective date of any adverse action. The policies provide that in certain cases,

employees may be disciplined immediately, but that they will still be given notice of the reasons for the disciplinary action within a reasonable time and shall have the appeal and hearing rights set out in the policies. The policies give the employee an opportunity to respond to the notice and to appeal through an administrative hearing process.

In contrast to these provisions, the manual also states that, in establishing the policies and procedures, the City is "not creating a property interest for employees that leads to the expectancy of continued employment at any time," and that the City is an "at-will" employer. The manual further provides that the policies are subject to periodic revisions throughout the year, additional policies will be incorporated into the manual, and the City will review the policies annually to determine if additional revisions are necessary.

Sometime in 1996, the Mayor told DeClue that the City was considering changing the personnel policies. Then, in July 1996, the City held a meeting with its employees, including DeClue, to discuss the proposed changes. DeClue could not recall if he had a draft of the proposed changes at the time, but he believed he did. DeClue spoke at the meeting, telling city officials "that I didn't think that it was right to take away the grievance procedures . . . and that they should be protecting the rights of the employees. . . ." He argued that the City should keep the current policy, only amending it as necessary.

In January 1997, the City adopted new personnel policies. The new policies superseded the previous policies and removed all of the provisions regarding grounds for disciplinary action, notice, and grievance procedures. Like the 1992 manual, the new manual provides that the City is not creating a property interest and that employment is "at will." DeClue received a copy of the revised policies that same month.

In March 1997, after allegedly receiving complaints from City employees about DeClue's conduct at work, the City Manager asked DeClue to attend a meeting with City Council members. At the meeting, the City Manager told DeClue he was going to be fired and gave him the option of resigning. DeClue replied that he wanted to consult an attorney and then left the meeting. His termination became effective the same day. DeClue did not request a hearing or file a grievance regarding his termination. Instead, he filed this lawsuit.

### Case No. A00A0958

1. *The due process claim.* DeClue contends the trial court erred in denying his motion for summary judgment and granting the City's motion for summary judgment on the due process claim. DeClue claims he had a property interest in his employment, and he was

deprived of that property interest without due process, in violation of the federal and state constitutions. We hold that he was not denied due process.

The Fourteenth Amendment to the U. S. Constitution protects persons from deprivation of liberty or property without due process of law.[1] Property interests are not created by the federal constitution; they are created and defined by rules and understandings stemming from an independent source, such as state law.[2]

Under Georgia law, generally, one in public employment has no vested right to such employment.[3] However, a public employee has a property interest in his job if his employment allows dismissal only for cause.[4] An explicit contractual provision, rules, or common understandings may determine whether an employee is terminable at will or only for cause.[5] The issue is not dependent upon the presence of the specific words "for cause" in the employer's written personnel policies, as long as whatever provisions apply are meant to be analogous to allowing termination only for cause.[6] The expectations of the parties involved are also relevant to this issue.[7]

There is some evidence supporting DeClue's argument that he had a property interest under the 1992 policy manual. As discussed above, the 1992 manual allows disciplinary action against employees only for certain reasons, requires notice before disciplinary action is taken in most cases, provides for progressive discipline, and provides employees with an opportunity to respond to charges and pursue administrative appeals. In fact, the manual lists as grounds for disciplinary action "violation of any other provision of these policies or any other reason which is *just cause* for discipline." (Emphasis supplied.) And, there is some evidence that the parties expected that termination would be only for cause, given a council member's testimony that he believed the City needed a reason to fire employees and DeClue's testimony that he believed an employee had a right to a grievance hearing before being fired. Thus, there is evidence that the 1992 manual allows termination only for cause.[8]

At the same time, however, the 1992 manual expressly provides that the City is not creating a property interest, that employment is at will, and that the policies are subject to periodic revision and

---

[1] *Brown v. Ga. Dept. of Revenue*, 881 F2d 1018, 1024 (11th Cir. 1989).

[2] Id.

[3] *Dixon v. MARTA*, 242 Ga. App. 262, 264 (1) (529 SE2d 398) (2000).

[4] *Maxwell v. Mayor &c. of Savannah*, 226 Ga. App. 705, 707 (1) (487 SE2d 478) (1997); see *Dixon*, supra.

[5] *Brown*, supra at 1025.

[6] *Maxwell*, supra.

[7] Id.

[8] See *Brown*, supra at 1027.

annual review by the City. This indicates that termination can be without cause. Therefore, DeClue has not shown as a matter of law that the 1992 policies gave him a property interest in his continued employment with the City. Thus, he was not entitled to summary judgment on this issue.

Although the evidence conflicts regarding the existence of a property interest, the City was entitled to summary judgment on the due process issue. This is because even if we assume DeClue had a property interest under the 1992 policy, two material due process questions remain: Was the City authorized to change the rules in 1997 and apply those rules to DeClue? Did DeClue receive due process? We answer both questions in the affirmative.

An employer may affect, revoke, or terminate even vested property rights so long as it does so in accordance with constitutional standards of due process.[9] The constitutionally guaranteed right to due process is, at its core, the right of notice and the opportunity to be heard.[10] The due process right does not guarantee a particular form or method of procedure, but is satisfied if a party has reasonable notice and opportunity to be heard and to present its claim or defense.[11]

DeClue complains that the City deprived him of his property interest in continued employment by changing the personnel policies without first giving him notice and an opportunity to be heard. Specifically, he complains that the City did not emphasize the fact that employees would lose their "for cause" rights if the proposed changes were made, held only one meeting to discuss the proposed changes, and did not provide employees with a draft of proposed changes.

Despite these arguments, DeClue admitted on deposition that the Mayor notified him in advance that the City was considering changing the personnel policies. Then, before the policies were changed, the City met with employees, including DeClue, about the changes. DeClue voiced his opposition to the changes, specifically addressing the repeal of the grievance procedures. DeClue told city officials that he wanted to keep the old policies. It is clear that DeClue was aware of the proposed changes, that he had notice of the proposed changes, and that he exercised his opportunity to be heard regarding the changes. Therefore, his argument that the City changed the policies without first giving him the requisite notice and opportunity to be heard is without merit. We do not agree that the City was required to emphasize certain revisions at the meeting, particularly when DeClue clearly knew about them, or that the City was

---

[9] *Peterson v. Atlanta Housing Auth.*, 998 F2d 904, 914-915 (11th Cir. 1993).

[10] *Cobb County School Dist. v. Barker*, 271 Ga. 35, 37 (2) (518 SE2d 126) (1999).

[11] Id.

required to hold more than one meeting to satisfy the basic requirements of procedural due process.[12]

And, because DeClue no longer had any property interest in his employment after the new policies became effective in 1997, the City did not violate his due process rights by terminating his employment without notice and a hearing.[13]

2. *The impairment of contract claim.* DeClue argues that the trial court erred in denying his motion for summary judgment based on his impairment of contract claim. In that claim, DeClue asserts that the City violated the state constitution when it passed an ordinance adopting the new policies, thereby impairing the contract under which he was hired. We agree with the trial court that DeClue was not entitled to summary judgment on this issue.

A governing authority has the power to amend or adopt reasonable ordinances, resolutions, or regulations relating to its property affairs and local government which are not inconsistent with the constitution.[14] The Georgia Constitution prohibits a legislative body from passing laws that impair the obligation of a contract.[15] A constitutional act of the legislature has been found to be the equivalent of a contract, and the rights created thereby cannot be impaired by subsequent legislation.[16]

In this case, the City created the equivalent of a contract when it passed the ordinance adopting the 1992 personnel policies. Yet, it did not impair DeClue's contract rights in 1997 when it passed the ordinance adopting the new policies. The 1992 policies expressly provide that they are subject to periodic revision by the City and that the policies will be reviewed annually to determine if additional revisions are necessary. Where the contract terms themselves provide for subsequent amendment, modification, or termination, no "vested" right under the contract is created.[17] Thus, the later legislation did not impair DeClue's contract rights as prohibited by Georgia's Constitution.[18]

The case of *Clark v. State Personnel Bd.*[19] does not require a contrary result. In *Clark*, the legislature had amended OCGA § 45-20-2 (15) (Y) so as to remove the position of "Major" in the Department of

---

[12] See generally *City of Atlanta v. Mahony*, 162 Ga. App. 5, 6 (289 SE2d 250) (1982).

[13] See generally *Camden County v. Haddock*, 271 Ga. 664, 665 (1) (523 SE2d 291) (1999).

[14] OCGA § 36-35-3 (a), (b).

[15] Art. I, Sec. I, Par. X; *Fulton v. Baker*, 261 Ga. 710, 711 (410 SE2d 735) (1991).

[16] *Enger v. Erwin*, 245 Ga. 753, 754 (267 SE2d 25) (1980).

[17] *Murray County v. Adams*, 218 Ga. App. 220, 222 (1) (461 SE2d 228) (1995).

[18] See generally *Pulliam v. Ga. Firemen's Pension Fund*, 262 Ga. 411, 413 (1) (419 SE2d 918) (1992).

[19] 252 Ga. 548 (314 SE2d 658) (1984).

Public Safety from state merit system classification. Employees currently holding that position sued, alleging the new legislation unconstitutionally impaired the obligation of contracts. The Supreme Court found that the state merit system employees had contract rights which could not be impaired by subsequent legislation and that the merit system was obligated to comply with the rules as they existed when the employees assumed their positions as Majors.

This case is different. In *Clark*, the Court based its decision on the fact that the Merit System Act has as its stated purpose that of building a career service in government which would attract, select, and retain the best employees based on merit, without coercive political influences.[20] The Court reasoned that the purposes of the Merit System Act would be achieved by affording reasonable job security for competent employees.[21] The Supreme Court stated that "(t)o say that the Merit System Act does not create a constitutionally protected contract between the merit system members and the state would overlook the obvious purpose of the Act itself."

The policies in the instant case contain no purpose such as that discussed in *Clark*. Indeed, in this case, the City makes it clear in its 1992 policies that it has "no intention of establishing a civil service system with these policies," that it is an "at-will employer," and that it "is not creating a property interest for employees that leads to the expectation of continued employment at any time, in any positions." This intent is further borne out by the City's reserving the right to regularly review and unilaterally revise its policies. The trial court did not err in denying DeClue's motion for summary judgment on this issue.

3. Because the trial court correctly granted summary judgment to the City on the due process and impairment issues and because the grant of summary judgment must be affirmed if it is right for any reason,[22] we need not consider DeClue's argument regarding whether he exhausted his administrative remedies prior to filing suit.

4. DeClue argues that the trial court violated Uniform Superior Court Rule 6.6[23] by moving the trial from the November 1999 calendar to the February 2000 calendar, which allowed the City time to move for summary judgment. The trial court gives no reason in its order for rescheduling the trial. In fact, the City urges that the trial was rescheduled only after DeClue informed the court that he was

---

[20] Id. at 549.
[21] OCGA § 45-20-1 (b); *Clark,* supra.
[22] See *Nairon v. Land,* 242 Ga. App. 259 (529 SE2d 390) (2000).
[23] USCR 6.6 provides that motions for summary judgment shall be filed sufficiently early so as not to delay trial and that no trial is to be continued by reason of the delayed filing of a summary judgment motion.

going to appeal its orders regarding summary judgment. Nothing in the record indicates that the trial was reset so that the City could move for summary judgment on the impairment claim. The trial court has broad discretion in regulating its business and in scheduling trials.[24] And we will not presume error from a silent record.[25] This enumeration presents no grounds for reversal.

### Case No. A00A1530

5. DeClue contends the trial court erred in granting the City's motion for summary judgment on the impairment claim. For the reasons discussed in Division 2, the City would be entitled to summary judgment on this issue.

However, DeClue correctly points out that the trial court was without jurisdiction to consider the City's summary judgment motion on the impairment of contract claim while the case was being considered in this Court. The filing of the notice of appeal operates as a supersedeas and deprives the trial court of the power to affect the judgment appealed, so that subsequent proceedings purporting to supplement, amend, alter, or modify the judgment are without effect.[26] The trial court's order purporting to supplement the judgment as to the impairment claim, which issue was being considered in this Court, is a nullity and must be vacated. On remand, the trial court is directed to enter an order on the City's summary judgment motion consistent with this opinion.

*Judgment affirmed in Case No. A00A0958. Judgment vacated and case remanded with direction in Case No. A00A1530. Pope, P. J., and Phipps, J., concur.*

DECIDED OCTOBER 24, 2000 — ■

*Orr & Orr, E. Wycliff Orr, Kristine E. Orr*, for appellant.
*Goldner, Sommers, Scrudder & Bass, Glenn S. Bass, Aaron J. Aberson, William B. Barker*, for appellee.

---

[24] See generally *Stubbs v. Carpenter*, 271 Ga. 327, 328 (519 SE2d 451) (1999).
[25] See *Bonner v. Smith*, 226 Ga. App. 3, 4 (2) (485 SE2d 214) (1997).
[26] See *Bryan v. Brown Childs Realty Co.*, 236 Ga. App. 739, 742 (2) (513 SE2d 271) (1999).