71182. CITY OF ATHENS v. McGAHEE et al.
(341 SE2d 855)

McMURRAY, Presiding Judge.

The plaintiffs sought declaratory judgment against their employer, the City of Athens (city), in regard to their entitlement to certain severance pay benefits, basing their claims both on State law and federal rights conferred upon them by 42 USCA § 1983. The trial court granted their motion for partial summary judgment under both theories of recovery and the city appeals. *Held:*

1. Plaintiffs are now or were police officers of the city who were employed continuously between August 4, 1970, and July 1, 1980. On August 4, 1970, the governing body of the city, by legislative action, adopted comprehensive personnel policies for all salaried full-time employees, including the following provision: "PERSONNEL POLI-

CIES — CITY OF ATHENS . . . VI. SEVERANCE PAY FOR RETIRING EMPLOYEES. A. Salaried employees of the City of Athens shall be entitled to severance pay, upon his or her retirement, based on the number of years service in accordance with the following schedule: One months salary for service from 15 to 20 years[.] Two months salary for service from 20 to 25 years[.] Three months salary for service from 25 to 30 years[.] Four months salary for service from 30 years or more[.] Only employees who retire under the City's pension program or disability coverage or employees who are eligible to retire under the City of Athens pension plan will receive severance pay." On July 1, 1980, the city governing authority adopted an ordinance repealing all ordinances awarding severance pay upon retirement to salaried employees of the city.

All of the plaintiffs were eligible to receive benefits under the city's pension plan and each had obtained at least 15 years of service when the ordinance providing for severance pay was repealed. The plaintiffs contended, and the trial court agreed, that because they had contracts with the city which were governed by and reduced to writing in the pension plans and merit systems established by the city under the authority of OCGA §§ 36-34-1 and 36-34-2 and the city charter, the existence of these plans created contractual rights in each of them which were reinforced by their contributions to the pension plans maintained while the severance pay benefit was in effect; and that the city therefore could not unilaterally revoke these contracts or deprive plaintiffs of benefits to which they became entitled by virtue of their employment while these policies were in effect. See *Clark v. State Personnel Bd.*, 252 Ga. 548, 549 (2 (a)) (314 SE2d 658) (1984); *Withers v. Register*, 246 Ga. 158, 159 (1) (269 SE2d 431) (1980); *Undercofler v. Scott*, 220 Ga. 406 (1) (139 SE2d 299) (1964); *Dinnan v. Totis*, 159 Ga. App. 352, 353 (1) (283 SE2d 321) (1981).

The city argues on appeal that this benefit was not a part of the pension plan to which plaintiffs contributed, but was a mere gratuitous fringe benefit which never became a vested right because none of the plaintiffs retired prior to the repeal of the severance pay provision; and that either employee contributions or a fully vested entitlement are essential elements of a claim of impairment of contract rights. The city also asserts that the 1970 city council lacked authority to bind succeeding councils to provide severance pay to retiring employees.

"Long before the rule was recognized generally by the courts of the several states, it was the law of this state that a statute or ordinance establishing a retirement plan for government employees becomes a part of an employee's contract of employment if the employee contributes at any time any amount toward the benefits he is to receive, and if the employee performs services while the law is in

effect; and that the impairment clause of our constitution (Art. I, Sec. I, Par. VII, Constitution of Georgia of 1976; Code Ann. § 2-107; [Art. I, Sec. I, Par. X, Constitution of Georgia of 1983]) precludes the application of an amendatory statute or ordinance in the calculation of the employee's retirement benefits if the effect of the amendment is to reduce rather than increase the benefits payable. It is not necessary for an application of this rule that the rights of the employee shall have become vested under the terms of the retirement plan while the amendment is in effect. Rather, if the employee performs services during the effective dates of the legislation, the benefits are constitutionally vested, precluding their legislative repeal as to the employee, regardless of whether or not the employee would be able to retire on any basis under the plan. [Cits.]" *Withers v. Register*, 246 Ga. 158, 159, supra.

We conclude that the issue of employee contributions is most properly decided under the reasoning of this court in *Dinnan v. Totis*, 159 Ga. App. 352, 354-355, supra, wherein we stated: "Fringe benefits of numerous sorts have become a substitute for actual direct increases in wages or salaries. They are no longer bonuses in the traditional sense of the term, but part and parcel of the remuneration package. . . . The applicable principles may be summarized as follows. Fringe benefits are an inherent part of compensation. Payments by employers of employees' pension contributions, and insurance policies, both life and health, have all become vital ingredients of employment. Such payments can no longer be considered as gratuities or voluntary since they are essential elements of most compensation arrangements in that they benefit both the employer and the employee. . . . Hence, one must overlook present realities to apply a moribund rule to the effect that where an employer pays the entire amount of the [benefit] for its employees that this constitutes a mere gratuity."

Since plaintiffs rendered services and made contributions to the city's retirement plan, of which under the *Dinnan v. Totis*, supra, rationale the fringe benefit of severance pay must be considered an integral part of the entire package, while the 1970 ordinance was still in effect, the trial court correctly ruled that the impairment clause of the state constitution prohibited the city from enacting legislation to reduce benefits which plaintiffs had already accrued.

The city's second argument must likewise fail. The Supreme Court in *City of Summerville v. Ga. Power Co.*, 205 Ga. 843 (1) (55 SE2d 540), established that contracts within the charter powers of the city are binding and not violative of former Code § 69-202 (now OCGA § 36-30-3 (a)) prohibiting one city council from binding by ordinance its successors. The trial court here properly considered the four tests of whether a municipal contract is subject to the prohibi-

tion of OCGA § 36-30-3 (a) as set forth in *City of Powder Springs v. WMM Properties*, 253 Ga. 753, 756-757 (2) (325 SE2d 155) (1985), and we agree with its finding that in view of the charter provisions conferring broad authority upon the city to "establish a pension system . . . upon such terms and conditions as the Mayor and Council of the City of Athens shall deem proper," the contract clearly fell into the express authority exception. Such systems "designed to stimulate and reward the faithful career services of employees" maintained by a city under the mandate of its charter bestow vested and contractual rights which may not be taken from the employee entitled thereto in an indiscriminate or arbitrary manner, and it is the duty of the courts in an appropriate case to protect those rights. *City of East Point v. Grayson*, 109 Ga. App. 413, 417 (136 SE2d 434) (1964). Compare *Brown v. City of East Point*, 246 Ga. 144 (268 SE2d 912) (1980), where incremental pay raises adopted by ordinance were held not to be a portion of a charter enacted by the General Assembly pertaining to pension rights, and thus ultra vires and void.

2. We also agree with the trial court's holding that the Fourteenth Amendment to the Constitution of the United States protects each person against governmental deprivation of property rights without cause or compensation, and that any action "under color of" state law which has this effect affords a cause of action under 42 USCA § 1983. As interpreted by our Supreme Court, 42 USCA § 1983 creates "a cause of action, cognizable by the courts of this state, based upon acts which are in implementation of an *intentional policy*, adopted or ratified by the governing body of a public agency, which acts work deprivation of a constitutional right. . . . What is required to be proved, directly or circumstantially, is that a governing body has worked constitutional deprivation of a citizen pursuant to an impermissible or corrupt policy which is intentional and deliberate." *City of Cave Spring v. Mason*, 252 Ga. 3, 4-5 (310 SE2d 892) (1984). A municipality is a person within the meaning of § 1983. *Monell v. N. Y. Dept. of Social Svcs.*, 436 U. S. 658 (98 SC 2018, 56 LE2d 611) (1978); *Poss v. Moreland*, 253 Ga. 730, 733 (324 SE2d 456) (1985). "[A] person receiving . . . benefits under statutory and administrative standards defining eligibility for them has an interest in continued receipt of those benefits that is safeguarded by procedural due process. *Goldberg v. Kelly*, 397 U. S. 254 (90 SC 1011, 25 LE2d 297)." *Board of Regents of State Colleges v. Roth*, 408 U. S. 564, 576 (92 SC 2701, 33 LE2d 548) (1972). "This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.' [Cits.]" *Bell v. Burson*, 402 U. S. 535, 539 (91 SC 1586, 29 LE2d 90) (1971).

Under the guidelines set forth in *Lugar v. Edmondson Oil Co.*,

457 U. S. 922 (102 SC 2744, 73 LE2d 482) (1982), "[a] plaintiff in a § 1983 action must show (1) 'that he has been deprived "of a right secured by the 'constitution and laws' of the United States," ' and that (2) the defendant acted under color of state law. . . . The conduct causing the deprivation must be fairly attributable to the state in order to be conduct 'under-color-of-state-law.' . . . A. The deprivation must be caused by: (i) The exercise of some right or privilege created by the state, or (ii) a rule of conduct imposed by the state, or (iii) a person for whom the state is responsible. B. The party charged with the deprivation must be a 'state actor' in that: (i) He is a state official, or (ii) he has acted together with or has obtained significant aid from state officials, or (iii) his conduct is otherwise chargeable to the state. A and B are separate requirements each of which is necessary to establish conduct 'under-color-of-state-law.' Of course, in the case of the conduct of one who has been clothed with official state authority A and B are both present in that single circumstance because he is a person for whom the state is responsible, A (iii), and is a state official, B (i)." *Poss v. Moreland*, 253 Ga. 730, 731-732, supra. The City of Athens, by virtue of its charter, and its governing authority thereunder are within this category. Accordingly, the benefits sought by plaintiffs were of a class of property protected against arbitrary and unilateral cancellation without cause by the city, and the city's action in attempting to do so created a cause of action under 42 USCA § 1983. It follows that the trial court properly granted partial summary judgment as to these issues.

*Judgment affirmed. Banke, C. J., and Benham, J., concur.*

DECIDED JANUARY 9, 1986 —
REHEARING DENIED FEBRUARY 28, 1986 —

*Terrell W. Benton, Jr., Andrew H. Marshall,* for appellant.
*David R. Sweat,* for appellees.