A95A0523. MURRAY COUNTY SCHOOL DISTRICT et al.
v. ADAMS et al.
(461 SE2d 228)

SMITH, Judge.

William France Adams, Timothy Howard, Elizabeth Gould, and Kathryn Morton, employees of the Murray County School System, brought a class action on behalf of themselves and all others similarly situated against the Murray County School District and the Murray County Board of Education (collectively "the Board"). They challenged the Board's decision to terminate the employer matching portion of a previously established annuity retirement savings plan for employees. The plaintiffs alleged the Board's action was an unconstitutional impairment of their contractual right to the matching funds and violated their constitutional right to due process of law. The trial court granted partial summary judgment in favor of the plaintiffs on the issue of liability, and this appeal ensued.

Several questions are raised on appeal. The principal — and determinative — issue, though, is whether the plaintiffs have a property interest in the program as originally instituted that precludes the Board from terminating its matching contribution. We conclude they do not, and we therefore reverse the trial court's judgment.

The facts are not in dispute. Named plaintiffs are all school teachers and administrators who participated in a retirement savings plan initiated in 1989 by the Board. They sought to represent a class comprised, subject to a few limited exceptions, of all employees of the Murray County School District who participated through payroll deductions in the plan at any time between its inception in September 1989 and July 22, 1991, when the matching contribution was terminated, and who continued to be employed by the school district at any time after that date.

All Georgia's public school systems contribute to the Teacher Retirement System for certificated personnel and to the Public School Employees Retirement System for other personnel. OCGA §§ 47-3-1 et seq.; 47-4-1 et seq. In addition, a majority of public school systems

also participate in the Social Security system. The Murray County School System does not participate in the Social Security program. In response to employee concerns in this regard, the Board sought to establish a package of fringe benefits for its employees that would allow the county "to remain competitive with surrounding systems in retaining employees and attracting new ones."

To accomplish this purpose, the school superintendent brought to the Board a proposal for instituting a tax-sheltered annuity program as a "viable budgetary substitute" to reentering the Social Security system. He contacted various annuity companies about providing such a program, and a committee selected a program administered by the Variable Annuity Life Insurance Company ("VALIC"). The proposal was adopted by the Board as reflected in the minutes of its regular monthly meeting on June 19, 1989, at which representatives of VALIC were present. Attached to the minutes of that meeting was a document summarizing in outline form the main features of the proposal, entitled "Plan Design." VALIC then prepared a document embodying all the terms of the plan in detail. It was completed several months later and is captioned "Murray County Board of Education Retirement Savings Plan."

Under the plan, the employer was required to contribute a "base" amount of two percent of each participating employee's salary. In addition, employees could choose to make additional, voluntary contributions of one to four percent of pay, fifty percent of which would be matched by the employer. It is the latter employer contribution that was terminated by Board action in July 1991. The "base" two percent employer contribution remains in effect. Each employee who wished to participate in the plan was required to execute an enrollment form in order to authorize payroll deductions.

1. Originally, fringe benefits for government employees, including retirement plans, were considered "gratuities" that were terminable at the will of the employer. In *Trotzier v. McElroy*, 182 Ga. 719 (186 SE 817) (1936), the Georgia Supreme Court held that retirement plans for government employees constituted enforceable terms of employment contracts. Consideration for these benefits is the employees' continued service, as well as any employee contributions to the benefit plans. In *Trotzier*, however, the holding that such benefits could not be terminated at the employer's will by amending ordinances or statutes was restricted to benefits that had "vested" because the retirement contingency had occurred. Id. at 725. In *Bender v. Anglin*, 207 Ga. 108 (60 SE2d 756) (1950), the Supreme Court extended the holding in *Trotzier* to attempts to reduce benefits *before* retirement.

It is clear that any attempt to reduce or terminate such benefits violates the prohibition in Art. I, Sec. I, Par. X of the Ga. Const. of 1983 against the impairment of contracts. "Where a statute or ordi-

nance establishes a retirement plan for government employees, and the employee contributes toward the benefits he is to receive and performs services while the ordinance or statute is in effect, the ordinance or statute becomes part of the contract of employment and is a part of the compensation for the services rendered so that an attempt to amend the statute or ordinance and reduce, or eliminate, the retirement benefits the employee is to receive violates the impairment clause of the state constitution. [Cits.]" *Swann v. Bd. of Trustees &c.*, 257 Ga. 450, 454 (2) (360 SE2d 395) (1987). Moreover, the impairment clause "precludes the application of an amendatory statute or ordinance in the calculation of the employee's retirement benefits if the *effect* of the amendment is to reduce rather than increase the benefits payable." (Emphasis supplied.) *Withers v. Register*, 246 Ga. 158, 159 (1) (269 SE2d 431) (1980).

The trial court relied on *Withers*, finding that the Board's action in adopting the plan was a "legislative action" and that its action eliminating the matching contribution was an "amendatory action" that had the effect of "reducing rather than increasing the benefits payable to plaintiffs under the Plan," an action forbidden under *Withers*.

The Supreme Court, however, had no difficulty in holding as long ago as 1954 that where a statute *itself* provides that it is subject to legislative change it *may* be amended, because no "vested right" to unchanged benefits was created. *Pritchard v. Bd. of Commrs. &c. of Ga.*, 211 Ga. 57, 59 (84 SE2d 26) (1954). This principle, equal in importance to the one set forth in *Withers*, was reaffirmed in *Pulliam v. Ga. Firemen's Pension Fund*, 262 Ga. 411, 412-413 (1) (419 SE2d 918) (1992).

The Supreme Court pointed out in *Pulliam* that "[t]he basis for the constitutional vesting of rights in pensions is that the pension rights are property and cannot be taken. However, they are property because they become part of the contract of employment." Id. at 413 (1). Where, as in *Pritchard* and *Pulliam*, the contract terms themselves provide for subsequent amendment — modification or termination — the employee never obtained a property right in unchanged benefits.

The trial court concluded that *Withers* controls this case, ruling that the principle of *Pritchard* and *Pulliam* does not apply because only the "Plan Design" document, which does not provide that the plan may be amended or terminated in the future, was attached to the Board minutes. We disagree with this conclusion. In fact, we find the principles in *Pulliam* are both applicable here and particularly instructive.

Assuming, without deciding, that the Board's action was a legislative rather than an executive action, that action was to "approve the

fringe benefit package presented by Valic," not to adopt the "Plan Design" document. The plan design is not "the fringe benefit package"; it is merely a summary of the plan in outline form. The complete package, with all its provisions, is contained in the document captioned "Murray County Board of Education Retirement Savings Plan." That document provides clearly that the employer "shall have full authority to control and manage the operation and administration of the Plan and to amend or terminate the Plan at any time." We therefore hold that the plan that became part of the employees' contracts under *Swann*, supra, like that in *Pritchard* and *Pulliam*, itself provided for future modification and/or termination at the discretion of the employer. Since the terms of their employment contracts provided that the terms of the plan could be modified or changed in the future, the participating employees never acquired a property right in the benefits like that acquired by the participating employees in *Withers*, supra. Under the plan, the Board had the right to modify benefits in the manner undertaken in July 1991.

2. As in *Pulliam*, supra at 413 (2), there is no property interest to be protected, so the Due Process Clause of the United States Constitution has no application here.

*Judgment reversed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED JUNE 21, 1995 —
RECONSIDERATION DENIED JULY 28, 1995 — 

*Harben & Hartley, Phillip L. Hartley, Martha M. Pearson*, for appellants.

*Waycaster, Corn, Murray & Morris, Cynthia N. Johnson, Zimring, Ellin & Miller, Michael E. Kramer*, for appellees.