In the Supreme Court of Georgia

Decided: November 2, 2015

S15A0816. BORDERS et al. v. CITY OF ATLANTA et al.

HINES, Presiding Justice.

This is an appeal in a class action challenging a 2011 City of Atlanta ("City") ordinance ("Ordinance") and the consequent amendment ("Amendment") by the City of its three defined benefit pension plans ("Plans"), i.e., the City's General Employees' Pension Plan; the City's Police Officers' Pension Plan; and the City's Firefighters' Pension Plan; the Ordinance and Amendment increased the percentage of salary required as the annual contributions of the members of the Plans.[1] The action, filed against the City, the Mayor, and members of the Atlanta City Council (collectively "Defendants"), is on behalf of City employees who participated in the Plans prior to November 1, 2011, and had not retired prior to that date, which was the

[1]The terms of the Plans are set forth in the Related Laws division of the Atlanta City Code ("City Code"), specifically City Code Part I [Charter and Related Laws], Subpart B [Related Laws Division], and Chapter 6 [Pensions].

start date for the increase, and were otherwise subject to the Amendment ("Plaintiffs").[2] For the reasons which follow, we affirm the grant of summary judgment in favor of Defendants on Plaintiffs' claims of breach of contract and unconstitutional impairment of contract and their consequent requests for declaratory and injunctive relief.

As noted, the Plans are defined benefit pension plans. As such, they provide each eligible member[3] with a monthly income upon retirement for the remainder of the member's life and a monthly income to the member's surviving eligible beneficiary, if applicable, for the remainder of the surviving eligible beneficiary's life. The member's annual benefit amount is a percentage of the member's annual salary, and is calculated at retirement by using a pre-determined formula.[4]

Prior to November 1, 2011, members were required to contribute 7% of their annual salary to their pension plan if they did not have a designated eligible

---

[2]The class is comprised of more than 6,000 Plaintiffs.

[3]The Plaintiffs are all eligible members.

[4]The benefit formula for all three Plans calculates an annual pension amount by multiplying the member's years of service by a multiplier established in the pension plan in which the employee is enrolled.

beneficiary, and 8% of their annual salary to their pension plan if they had a designated eligible beneficiary. The contributions were made subsequent to enrollment in the Plans, as memorialized by the execution of enrollment cards at the onset of employment. The Plans, as they existed at the time of Plaintiffs' enrollments, contained provisions (collectively "Enrollment Provisions") which stated that the receipt of an executed enrollment or application card would constitute the irrevocable consent of the applicant to participate under the provisions of the governing act, as amended, or as might thereafter be amended.

On June 29, 2011, the City enacted Atlanta Ordinance 11-O-0672, which amended the Plans. Section 5 of the Ordinance, inter alia, increased Plaintiffs' prospective annual contributions to the Plans by an additional 5% of the member's annual compensation.[5] Section 9 of the Ordinance further provided that members' contributions might be increased by an additional 5%, up to 17% or 18% of their annual compensation, if the City's actual required contributions

---

[5]The Ordinance provides in Section 5 (d) (2) in pertinent part:

> Beginning on November 1, 2011, each DB [defined benefit] Plan Participant hired prior to that date shall contribute 12% of his/her Compensation to the applicable DB Plan if [he/she] does not have a designated beneficiary, and shall contribute 13% of [his/her] Compensation to the applicable DB Plan if [he/she] does have a designated beneficiary [.]

3

to the Plans exceed 35% of the City's total payroll.[6] The pension contribution increases were not retroactive and did not change a member's benefit formula, calculation of pension benefit, or actual benefit amount payable at the time of retirement.

The complaint, which was filed on November 14, 2013, alleged that Defendants breached Plaintiffs' employment contracts and violated the impairment clause of the State Constitution ("Impairment Clause"), Ga. Const. of 1983, Art. I, Sec. I, Par. X,[7] when Defendants passed the portions of the Ordinance which increased the amounts that the Plaintiffs were required to contribute to the Plans, even though Plaintiffs would receive the same amount of retirement benefits to which they were already entitled prior to passage of the Ordinance. Plaintiffs sought a declaration that the subject portions of the Ordinance violated the Impairment Clause and that Plaintiffs were not required

---

[6]Section 9 of the Ordinance also provides:

> In the event that the unfunded liability amount reaches 15% or less, the City may reduce the DB Plan Participants' contribution amount through duly enacted legislation.

[7]Ga. Const. of 1983, Art. I, Sec. I, Par. X, provides:

No bill of attainder, ex post facto law, retroactive law, or laws impairing the obligation of contract or making irrevocable grant of special privileges or immunities shall be passed.

to continue to make the increased contributions to the Plans, and an order enjoining and restraining Defendants from collecting or attempting to collect the increased contributions. Plaintiffs moved for class certification on November 14, 2013. On January 2, 2014, Defendants filed an answer and motion to dismiss, or in the alternative, motion for summary judgment. On March 20, 2014, Plaintiffs filed a motion for partial summary judgment on the issue of Defendants' liability. A consent order certifying the suit as a class action was entered on April 3, 2014. Following a hearing on the motions on May 15, 2014, the superior court entered on November 10, 2014, the "final order"[8] now at issue, denying Plaintiffs' motion for partial summary judgment and granting summary judgment to Defendants. The superior court did so after concluding that government employees and their beneficiaries have no vested rights in an unchanged benefit plan where the pension or retirement plan at issue

---

[8]On December 26, 2014, Defendants filed a motion for attorney fees and expenses of litigation pursuant to OCGA § 9-15-14, which was pending at the time of this appeal. Also, following the filing of their notice of appeal, Plaintiffs filed in superior court a motion for new trial based upon alleged newly discovered evidence, specifically, a 2009 letter written by then Atlanta mayor, Shirley Franklin, which purported to acknowledge that the City could not legally decrease existing employees' pension benefits. The superior court denied the motion on February 18, 2015, after finding that the letter was of no legal relevance or material evidentiary value. That ruling is not before us for consideration.

unambiguously provides for subsequent modification or amendment, and that there was no ambiguity in the City's Enrollment Provisions - that they clearly authorized the City to amend the Plans without breaching Plaintiffs' employment contracts or violating the Impairment Clause.

Plaintiffs' claims of breach of their employment contracts and violation of the Impairment Clause, in the context of litigation such as this, are subject to the same analysis inasmuch as allegations of violation of the Impairment Clause have historically been treated as raising breach of contract issues. *City of East Point v. Seagraves*, 240 Ga. App. 852, 854 (1) (524 SE2d 755) (1999); see also *Pulliam v. Ga. Firemen's Pension Fund*, 262 Ga. 411 (419 SE2d 918) (1992).

The analysis must begin with the recognition that municipal corporations are creations of the State, and therefore, have only those powers that have been expressly or impliedly granted to them. *Porter v. City of Atlanta*, 259 Ga. 526 (1) (384 SE2d 631) (1989). Such powers are delegated by the State via the State Constitution, State laws, and municipal charters. Id. In such context, assessing the validity of a city ordinance generally involves a two-step process: the first inquiry is whether the city possessed the power to enact the ordinance at issue,

and if the power exists, the second question is whether the exercise of that power is clearly reasonable. Id.

## I. *City's Power to Enact Ordinance*

Ga. Const. of 1983, Art. IX, Sec. II, Par. II provides "home rule" for municipalities, that is:

> The General Assembly may provide by law for the self-government of municipalities and to that end is expressly given the authority to delegate its power so that matters pertaining to municipalities may be dealt with without the necessity of action by the General Assembly.

The State Constitution also explicitly confers upon municipalities authority in regard to maintaining and modifying retirement or pension systems, e.g., a municipality has:

> [t]he power to maintain and modify heretofore existing retirement or pension systems, including such systems heretofore created by general laws of local application by population classification, and to continue in effect or modify other benefits heretofore provided as a part of or in addition to such retirement or pension systems and the power to create and maintain retirement or pension systems for any elected or appointed public officers and employees whose compensation is paid in whole or in part from county or municipal funds and for the beneficiaries of such officers and employees.

7

Ga. Const. of 1983, Art. IX, Sec. II, Par. III (a) (14).

In addition, the General Assembly has expressly authorized municipalities to establish and finance retirement systems and to provide retirement and pension benefits. OCGA § 36-34-2 (4) confers upon the governing body of any municipal corporation,

> [t]he power to establish merit systems, *retirement systems*, and insurance plans *for all municipal employees* and to establish insurance plans for school employees of independent municipal systems *and to provide the method or methods of financing such systems* and plans; . . .

(Emphasis added.) Furthermore, OCGA § 36-35-4 (a), in relevant part, authorizes a municipal corporation's governing authority to provide retirement and pension benefits:

> The governing authority of each municipal corporation is authorized to . . . provide . . . retirement, and pension benefits, . . .for its employees, their dependents, and their survivors . . . .

And, subsection (d) of OCGA § 36-35-4 defines the terms "retirement" and "pension" as used in subsection (a) of the statute,

> As used in subsection (a) of this Code section, the words "retirement" and "pension" shall mean

termination from municipal service with the right to receive a benefit based upon all or part of such municipal service *in accordance with the terms of the ordinance or contract pursuant to which the municipality provides for payment of such benefits.*

(Emphasis added.) Thus, the cited legislation explicitly contemplates that a municipal corporation's provision of retirement or pension benefits to its employees be read in conjunction with the terms of local law and ordinances, that is, that such provision of benefits be supplemented by local law such as that contained in the Code of the City of Atlanta ("City Code") and the Charter of the City of Atlanta ("City Charter"). *Duty Free Air & Ship Supply Co./Franklin Wilson Airport Concession, Inc. v. City of Atlanta*, 282 Ga. 173, 174 (646 SE2d 48) (2007).

## II. Reasonableness of Ordinance

The pivotal question as to the reasonableness of the exercise of power, i.e., the Ordinance, is whether it constitutes a breach of Plaintiffs' employment contracts, and consequently, amounts to a violation of the Impairment Clause. It is certainly true,

> that a statute or ordinance establishing a retirement plan for government employees becomes a part of an

9

employee's contract of employment if the employee contributes at any time any amount toward the benefits he is to receive, and if the employee performs services while the law is in effect; and that the impairment clause of our constitution . . . precludes the application of an amendatory statute or ordinance in the calculation of the employee's retirement benefits if the effect of the amendment is to reduce rather than increase the benefits payable. It is not necessary for an application of this rule that the rights of the employee shall have become vested under the terms of the retirement plan while the amendment is in effect. Rather, if the employee performs services during the effective dates of the legislation, the benefits are constitutionally vested, precluding their legislative repeal as to the employee, regardless of whether or not the employee would be able to retire on any basis under the plan.

*Withers v. Register*, 246 Ga. 158, 159 (1) (269 SE2d 431) (1980) (Internal citations omitted.) However, that is not the end of the inquiry as to any violation of the employment contracts or the Impairment Clause. Indeed, as the superior court aptly stated,

where the legislation establishing a pension plan itself provides that the plan may be subject to modification or amendment, the participant does not acquire a vested contractual right in an unchanged plan and the plan may be amended without breaching employment contracts or violating the Impairment Clause.

In *Pulliam v. Georgia Firemen's Pension Fund*, supra, the pensioner, who

had been receiving a disability pension from the Georgia Firemen's Pension fund for almost 20 years, received notice that his pension would be terminated as a result of a 1989 statutory amendment which provided for termination of benefits in the event a pensioner was employed in any capacity at least half-time. On appeal to this Court, the pensioner, inter alia, contested the legality of the 1989 amendment to the pension statute. He contended that it was error for the trial court to determine that he had no contractual right to benefits under the terms of the pension statute as it existed prior to the 1989 amendment; that the 1989 legislation could be applied to him without an unconstitutional impairment of contract; and that the 1989 amendment did not violate the Georgia statutory prohibition against retroactive legislation. *Pulliam* at 412 (1). This Court observed that all such claims raised the core issue of whether the pensioner had a property right in the pension benefits, which right could not be taken by legislative action; relying on *Withers v. Register,* supra, the pensioner contended that he did indeed have such a property right. Id. This Court quoted from its decision in *Pritchard v. Bd. of Comm. of Peace Officers Annuity & Benefit Fund of Georgia*, 211 Ga. 57, 59 (84 SE2d 26) (1954), which involved a statutory

provision equivalent to that involved in *Pulliam*:

> [Pritchard] paid his money into the fund with the act providing that it was subject to legislative change and that he should not have any vested right to annuities or benefits in the fund. There was no contract that the plan of annuities and benefits should never be changed. On the contrary, it was recognized that the legislature might find it necessary to make changes ....

And, this Court concluded that the constitutional vesting of rights in pensions is grounded in the principle that pension rights are property and cannot be taken; however, that they are property because they become part of the contract of employment. *Pulliam* at 412 (1). In that case, the provision for subsequent amendment was part of the contract of employment when the pensioner entered into it. Id. And, significantly because a benefit that had been paid to a pensioner was being taken away from the pensioner, the legislative act not only provided for future change but also expressly stated that members of the pension fund did not have vested rights to any benefits. Id. This explicit legislative statement that pensioners did not acquire any vested rights was likewise the situation in *Pritchard*. *Pritchard* supra at 59. Consequently, in both *Pulliam* and *Pritchard*, there was no breach of the contracts or unconstitutional

12

impairment of contract by virtue of the legislative changes.

The present case is not one in which there is an express legislative statement regarding the acquisition of vested pension rights, or the lack thereof; however, it is also not a situation in which pension benefits, which have already been conferred upon pensioners, are being reduced, suspended, or terminated. In *Hartsfield v. Mitchell*, 210 Ga. 197 (78 SE2d 493) (1953), a teacher in the Atlanta School System, pursuant to the Retirement Act of 1927, Ga.L.1927, p. 265, had salary deductions from the effective date of the act, so that he would have been entitled to receive one-half of the salary he was receiving at the time of his retirement in 1945, as provided in that act. However, the original act of 1927 was amended in 1935, Ga.L.1935, p. 445, to, inter alia, change the amount of salary deductions and fix the amount of retirement benefits not to exceed $100 per month. In 1935, the teacher had signed and filed with the board of trustees, a written statement containing the clause, "I hereby authorize City Controller to make necessary deductions from my wages or salary in order that I may participate in the pension benefits of the 1927 Pension Laws as amended," and then approximately ten years later in 1945, signed and filed a similar

statement with the board of trustees. This Court determined that such statements evidenced, inter alia, the teacher's irrevocable consent to the law as changed by amendment. *Hartsfield v. Mitchell*, supra at 197. Subsequent cases have also focused on the circumstance of the legislative act creating the pension rights or benefits expressly stating that it is subject to legislative change. See *City of E. Point v. Seagraves*, 240 Ga. App. 852 (524 SE2d 755) (1999) (city employee did not have vested right in retirement plan benefits where retirement plan specifically provided that city could terminate plan by adoption of ordinance); *DeKalb Cnty. Sch. Dist. v. Gold*, 318 Ga. App. 633 (734 SE2d 466) (2012) (the statute establishing benefits plan for government employees provides that it is subject to change; therefore, there is no contract that the plan of benefits should never be changed); *Murray Cnty. Sch. Dist. v. Adams*, 218 Ga. App. 220 (461 SE2d 228) (1995) (class action by school employees for terminating employer matching of employees' voluntary contributions to retirement plan for previously established annuity retirement savings plan; plan itself provided for future modification or termination, so employees did not have property right in unchanged benefits); *Webb v. Whitley*, 114 Ga. App. 153 (150 SE2d 261) (1966)

14

(by executing written statement authorizing deductions from wages for participation in pension benefits provided by statute as amended, city fireman irrevocably consented to the law as changed by amendment and surrendered any right to claim benefits as originally provided by the pension law).

As noted, the General Assembly expressly contemplated that a municipal corporation's provision for employee retirement or pension benefits would be subject to being supplemented by local law, such as that contained in the City Code and the City Charter.  Also as noted, the Plans as set forth in the Related Laws expressly provide for modification by explicit notice in the Plans' Enrollment Provisions. The precise language of these Enrollment Provisions was established by the General Assembly in 1980.[9]

The City's General Employees' Pension Plan set forth in Related Laws § 6-39 states:

> The receipt of an applicant's executed enrollment or application card by the commissioner of finance or his agent *shall constitute the irrevocable consent of the applicant to participate under the provisions of this*

---

[9]The language of the enrollment provision of the City's General Employees' Pension Plan is set forth in 1980 Ga. Laws 3691, § 1; that of the City's Police Officers' Pension Plan is set forth in 1980 Ga. Laws 3206, § 1; and that of the City's Firefighters' Pension Plan is stated in 1980 Ga. Laws 3204, § 1.

15

*Act, as amended, or as may hereafter be amended.*
(Emphasis supplied.)

The City's Police Officers' Pension Plan set forth in Related Laws §6-223 and the City's Firefighters' Pension Plan set forth in Related Laws § 6-368 contain virtually the identical statement, the only language difference being use of the word "hereinafter" instead of "hereafter."

As discussed, the statute or ordinance establishing a retirement plan for government employees becomes part of the employee's employment contract once the employee makes a contribution toward the benefits the employee is to receive, and performs services while the law is in effect. *Withers v. Register*, supra at 159 (1). Consequently, the Plans which include their legislatively-established Enrollment Provisions are part of Plaintiffs' employment contracts, so the next step in the analysis is an examination of the contractual Enrollment Provisions, that is, construction of the contracts.

In general,

[t]he construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear

16

terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury.

*City of Baldwin v. Woodard & Curran,* 293 Ga. 19, 30 (3) (743 SE2d 381) (2013), quoting *Record Town, Inc. v. Sugarloaf Mills Ltd. Partnership of Ga.,* 301 Ga. App. 367, 368 (687 SE2d 640) (2009). As stated, the superior court found the Enrollment Provisions to be unambiguous in authorizing the City to amend the Plans. On appeal, this Court's review of a trial court's construction of a contract is de novo. *Unified Gov't of Athens-Clarke Co. v. Stiles Apartments, Inc.,* 295 Ga. 829, 832 (1) (764 SE2d 403) (2014). The cardinal rule of contract construction is to ascertain the intention of the parties; however, when the contract terms are clear and unambiguous, the reviewing court looks solely to the contract itself to determine the parties' intent. Id.; *Lloyd's Syndicate No. 5820 v. AGCO Corp.,* 294 Ga. 805, 812 (2) (756 SE2d 520) (2014). Here, the language of the Enrollment Provisions is plain, unambiguous, and capable of only one reasonable construction in regard to the two points critical to the

17

resolution of the challenge in this case: that the receipt of an applicant's executed enrollment or application card evidenced the applicant's irrevocable consent to participate in the applicable retirement plan, and that the applicant would do so under the plan's governing laws as then amended, or as might be amended in the future. Thus, Plaintiffs did not acquire a vested contractual right in a retirement plan unaltered in the manner at issue. *Pulliam*, supra at 412 (1). This is so irrespective of the fact that there was no express statement in the governing laws that participants in the Plans would not have vested rights. See, e.g., *Hartsfield v. Mitchell*, supra.; *City of E. Point v. Seagraves*, supra.; *DeKalb Cnty. Sch. Dist. v. Gold*, supra.; *Murray Cnty. Sch. Dist. v. Adams*, supra.; *Webb v. Whitley*, supra. Indeed, in *Pritchard*, this Court, citing the United States Supreme Court case, *Wright v. Minnesota Mut. Life Ins. Co.*, 193 U.S. 657 (24 SCt. 549, 48 LEd 832) (1904), stated that even if the appellant pensioner had vested rights in his plan's benefits, he had no vested rights to a continuation of the original plan in all respects. *Pritchard* at 59. In *Pulliam*, this Court explained that,

> [t]he basis for the constitutional vesting of rights in
> pensions is that the pension rights are property and

18

cannot be taken. However, they are property because they become part of the contract of employment, and as this court pointed out in *Pritchard*, the provision for subsequent amendment was part of the contract when appellant entered into it.

*Pulliam* at 412 (1). This comports with the principle that

[t]o be vested, in its accurate legal sense, a right must be complete and consummated, and one of which the person to whom it belongs cannot be divested without his consent. A divestible right is never, in a strict sense, a vested right.

*Merchants' Bank v. Garrard*, 158 Ga. 867, 871 (2) (124 SE 715) (1924).

Recently, in *Taylor v. City of Gadsden*, 767 F3d 1124 (2014), the United States Court of Appeals for the Eleventh Circuit considered a class action brought by firefighters against the City of Gadsden, Alabama, and its mayor challenging increases in the pension contribution rates of firefighters with more than ten years of creditable service into the state-administered retirement fund as violative of the Contract Clause of the State and Federal Constitutions.[10]

---

[10]In the opinion's introductory paragraph, the Court observed,

This case presents a problem common to most cities in the United States. Their pension funds have been operating at a substantial loss, and the cities' long-term liabilities are becoming unfunded at an exponentially increasing rate. That is, the contributions employees and cities are making to pension funds – as a percentage of the employees' salaries – are being used to pay the pensions earned by retirees instead of being set aside and invested for employees' retirements.

Gadsden had raised its employees' pension contributions by 2.5% of their total compensation pursuant to state legislation mandating the increase for state employees and permitting, but not requiring, localities to do the same. Id. The responding lawsuit was brought by a class of Gadsden firefighters whose contribution rate was raised from 6% to 8.5%; they alleged that such action by the City of Gadsden impaired the terms of their employment contracts, in violation of both the United States Constitution and the Alabama Constitution. Id. at 1126-27. The plaintiff firefighters sought a declaratory judgment and preliminary and permanent injunctive relief restraining Gadsden from implementing the increased pension contribution rate of the affected pension plan participants. Id. at 1131. Upon consideration of cross-motions for summary judgment, the District Court rejected the constitutional claims and dismissed the case with prejudice, after finding that the firefighters had failed to demonstrate that any contractual right had been impaired. Id. at 1127, 1131.

The Eleventh Circuit affirmed the judgment of the District Court after finding that the increase in the firefighters' pension contributions did not impair

---

Id. at 1126.

their employment contracts in the contexts of both the United States and Alabama Constitutions. Id. at 1136. Pretermitting any differences in contract impairment analysis under federal law and Alabama law, key portions of the Eleventh Circuit's analysis are instructive in the present case. Those plaintiffs argued that the Gadsden firefighters who had complied with certain statutory requirements possessed a vested right to the 6% employee contribution rate. Id. at 1134. The Court observed that such argument "[relied] on the assumption that there exists an implied promise not to raise the employee contribution rate once a firefighter becomes eligible for retirement benefits." Id. Noting, inter alia, that the retirement system employee handbook "explicitly stated that the 'member contribution rate is determined by statute and subject to change by the Alabama Legislature,'" the Court then found that "whatever contractual terms preside over the employment relationship between the [City of Gadsden] and its firefighters, a promise to refrain from raising contribution rates is not one of them." Id. at 1134-1135. This was followed by the Court's astute observations that:

> the [City of Gadsden] did not alter plaintiffs' pension benefits; instead, it altered their pension *obligations*.

This distinction – between pension benefits and pension *obligations* – is warranted by the well-worn difference between earned and anticipated compensation under the Contract Clause. . . . Nothing in the challenged legislation divests plaintiffs of their earned pension benefits. Instead, the increased contribution rate simply reduces plaintiffs' anticipated compensation by deducting an additional 2.5% from their future take-home pay. . . . [I]ndirect effects on pension entitlements do not convert an otherwise unvested benefit into one that is constitutionally protected.

Id. at 1135, in part quoting *San Diego Police v. San Diego Ret. Sys*., 568 F3d 725, 738 (9th Cir.2009) (Internal citations and quotation marks omitted.)

The Eleventh Circuit concluded,

In sum, plaintiffs have no contractual right to a static, inviolable 6% contribution rate. The City was free to amend the employee contribution rate without constitutional consequence.

*Taylor v. City of Gadsden*, at 1135-1136.

In this case, as in *Taylor*, the local legislation at issue, i.e., the Ordinance, did not alter Plaintiffs' pension benefits, but rather modified their pension obligations, and in no manner divested Plaintiffs of their earned pension benefits, so as to implicate constitutional concerns. Simply, in the present case,

22

there was no breach of the employment contracts or the Impairment Clause in the manner urged by Plaintiffs, and therefore, such alleged breach and impairment fail to provide a basis upon which to find that the Ordinance is unreasonable. Furthermore, inasmuch as the increases in pension contributions pursuant to the Ordinance and Amendment were not retroactive and the Ordinance and Amendment do not alter benefit formulas, calculations of pension benefits, or the actual benefit amounts payable to the participants at the time of retirement, such circumstances likewise do not negatively impact the Ordinance. And, Plaintiffs have not provided any other meritorious legal basis upon which to find the Ordinance unreasonable.

Accordingly, we conclude that the superior court properly granted summary judgment in favor of Defendants on Plaintiffs' claims of breach of contract and unconstitutional impairment of contract.

Judgment affirmed. All the Justices concur.