**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 17, 2020**

# In the Court of Appeals of Georgia

A20A1230. CITY OF WAYCROSS, et al. v. JACK BENNETT, et al.

DILLARD, Presiding Judge.

The City of Waycross appeals the trial court's grant of partial summary judgment to a group of retired city employees, who sued the City after it terminated health-insurance benefits provided for in the City's "Health Plan" in effect at the time of the employees' respective retirements. The City also appeals the denial of its two motions for summary judgment.[1] In doing so, the City argues that the trial court erred in ruling for the retired employees because its actions were expressly permitted by the

---

[1] The trial court granted one of the City's motions for summary judgment in part, but that portion of the court's order has not been appealed by the plaintiff employees.

Health Plan and did not violate the Impairment Clause of the Georgia Constitution.[2]

For the reasons set forth *infra*, we reverse in part, vacate in part, and remand the case with direction.

---

[2] Although the Supreme Court of Georgia "has exclusive jurisdiction over all cases involving construction of the Constitution of the State of Georgia and of the United States and all cases in which the constitutionality of a law, ordinance, or constitutional provision has been called into question," *Atlanta Indep. Sch. Sys. v. Lane*, 266 Ga. 657, 657 (1) (469 SE2d 22) (1996) (citing Art. VI, Sec. VI, Par. II (1) of the Georgia Constitution), this Court does have "limited jurisdiction to review constitutional questions." *City of Decatur v. DeKalb Cty.*, 284 Ga. 434, 436 (2) (668 SE2d 247) (2008). Indeed, we have jurisdiction over cases that "involve the application, in a general sense, of unquestioned and unambiguous provisions of the Constitution to a given state of facts and that do not involve construction of some constitutional provision directly in question and doubtful either under its own terms or under the decisions of the Supreme Court of Georgia or the Supreme Court of the United States." *Id.* (punctuation omitted). And as discussed more fully *infra*, the issue in this appeal has been directly and unambiguously ruled upon by the Supreme Court of Georgia, and subsequently by this Court (applying the relevant Supreme Court precedent). The constitutional question in this case, then, falls squarely within our limited jurisdiction over such questions.

Viewing the evidence in the light most favorable to the nonmoving parties,[3] the record shows that the plaintiffs are all retired city employees. And at the time of their respective retirements, the City maintained a Health Plan, in which certain retirees were allowed to participate. The Health Plan contained a provision stating, "An employee who retires from active employment on or after attainment of age 55 and with 20 or more years of service may elect to continue medical, dental, and prescription under the [Health] Plan for himself/herself and his/her eligible Dependents until the retiree reaches the age of 65." Additionally, it is undisputed that when they retired, each plaintiff was at least 55 years old and had 20 or more years of service with the City. So, upon retirement, each plaintiff elected to continue participating in the City's Health Plan, as they were entitled to do under the foregoing provision. But then, on September 20, 2016, the Waycross City Commission voted to bar retirees from continuing to participate in the Health Plan. Indeed, the City

---

[3] *See*, *e.g.*, *Martin v. Herrington Mill, LP*, 316 Ga. App. 696, 696 (730 SE2d 164) (2012). The City and plaintiffs are both nonmoving parties because this appeal involves competing motions for summary judgment. But here, it is not necessary to view the evidence in a light most favorable to either party because the brief facts required to decide this case are entirely undisputed. Further, while the record consists of 1,276 pages, the parties cite only to the complaint and trial court's summary-judgment order, rather than to any underlying evidence, in detailing the factual background of this case. Suffice it to say, we also rely on those documents in doing the same.

Commission's Resolution No. 16-68 provides that "the Commission hereby approves the removal of retired employees from the City's Health Insurance Plan coverage, effective January 1, 2017." As a result, the plaintiffs are no longer receiving any benefits under the City's Health Plan.

Thereafter, the plaintiffs filed an action against the City, asserting claims of, *inter alia*, money damages resulting from breach of contract, promissory estoppel, and quantum meruit.[4] In their complaint, the plaintiffs contend that the City was not empowered to retroactively deprive them of vested retirement benefits and their constitutional rights have been violated. The City answered the complaint, asserting several affirmative defenses. Discovery then ensued, and on May 25, 2017, the City filed a motion for summary judgment, arguing that its actions did not violate the Impairment Clause because the plaintiffs had no vested right in the Health Plan's benefits. Indeed, according to the City, the Health Plan expressly permitted it to terminate those benefits for retirees.[5] The plaintiffs filed a response, as well as a

[4] The plaintiffs asserted claims against city commissioners individually, but those claims are not at issue in this appeal. And the claims addressed in this opinion were brought against the City only.

[5] The City also moved for summary judgment as to the plaintiffs' claims that it acted in bad faith, been stubbornly litigious, and caused unnecessary trouble and expense. The trial court granted the City's motion for summary judgment in part as

cross-motion for partial summary judgment only as to the following question: "Is the City of Waycross liable for violating the [I]mpairment [C]lause of the Georgia Constitution by amending its Health Plan to eliminate coverage for the [p]laintiffs?" The plaintiffs clarified that they were *not* moving for summary judgment on their claims of promissory estoppel and quantum meruit. The City then replied to the plaintiffs' response and motion for partial summary judgment.

On June 11, 2018, the City filed a second motion for summary judgment as to the plaintiffs' claims of promissory estoppel and quantum meruit,[6] and the plaintiffs filed a brief in opposition to that motion. Following a hearing on the parties' motions, the trial court issued an order, granting the plaintiffs' motion for partial summary judgment, denying the City's first motion for summary judgment,[7] and denying the City's second motion for summary judgment as moot. This appeal by the City follows.

_____

to those claims.

[6] The City's second motion also sought summary judgment as to the plaintiffs' mandamus claim, but that claim was brought against the city commissioners only.

[7] *See supra* note 5.

Summary judgment is proper when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[8] Furthermore, a *de novo* standard of review applies to "an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[9] Moreover, at the summary-judgment stage, "[w]e do not resolve disputed facts, reconcile the issues, weigh the evidence, or determine its credibility, as those matters must be submitted to a jury for resolution."[10] With these guiding principles in mind, we will now address the City's specific claims of error.

1. In two related claims, the City argues that its termination of the plaintiffs' health-insurance benefits was authorized by the contract (*i.e.*, the Health Plan), and that its actions did not violate the Impairment Clause of the Georgia Constitution. We agree.

As the Supreme Court of Georgia has explained, the plaintiffs' "claims of breach of . . . contract[ ] and violation of the Impairment Clause, in the context of

---

[8] OCGA § 9-11-56 (c); *accord Martin*, 316 Ga. App. at 697.

[9] *Martin*, 316 Ga. App. at 697 (punctuation omitted).

[10] *Tookes v. Murray*, 297 Ga. App. 765, 766 (678 SE2d 209) (2009).

litigation such as this, are subject to the same analysis inasmuch as allegations of violation of the Impairment Clause have historically been treated as raising breach of contract issues."[11] And the Impairment Clause of the Georgia Constitution provides: "No bill of attainder, ex post facto law, retroactive law, or laws impairing the obligation of contract or making irrevocable grant of special privileges or immunities shall be passed."[12] As our Supreme Court noted in *Withers v. Register*:[13]

> It [is] the law of this state that a statute or ordinance establishing a retirement plan for government employees becomes a part of an employee's contract of employment if the employee contributes at any time any amount toward the benefits he is to receive, and if the employee performs services while the law is in effect; and that the [I]mpairment [C]lause of our constitution precludes the application of an amendatory statute or ordinance in the calculation of the employee's

---

[11] *Borders v. City of Atlanta*, 298 Ga. 188, 190-91 (779 SE2d 279) (2015); *see City of E. Point v. Seagraves*, 240 Ga. App. 852, 854 (1) (524 SE2d 755) (1999) ("Georgia courts have historically treated impairment clause cases as breach issues.").

[12] Ga. Const. art. I, § 1, ¶ X; *see* U.S. Const. art. I, § 10 ("No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . . .").

[13] 246 Ga. 158 (269 SE2d 431) (1980).

retirement benefits if the effect of the amendment is to reduce rather than increase the benefits payable.[14]

Further, it is not necessary for an application of this rule that "the rights of the employee shall have become vested under the terms of the retirement plan while the amendment is in effect."[15] Instead, if the employee performs services during the effective dates of the legislation, the benefits are "constitutionally vested, precluding their legislative repeal as to the employee, regardless of whether or not the employee would be able to retire on any basis under the plan."[16]

As evidenced *supra*, our Supreme Court's construction of the Impairment Clause in *Withers* applies only to "retirement plan[s] for government employees," which are part of the employee's overall contract for employment.[17] And here, we

---

[14] *Id.* at 159 (1); *accord Borders*, 298 Ga. at 193 (II). We assume, without deciding, that the City's removal of the plaintiffs from the Health Plan was legislative, rather than executive, in nature. *See, e.g.*, *Murray Cty. Sch. Dist. v. Adams*, 218 Ga. App. 220, 222 (1) (461 SE2d 228) (1995) (assuming without deciding that a county board of education's action of approving a fringe benefit package was a legislative, rather than an executive, action).

[15] *Withers*, 246 Ga. at 159 (1); *accord Borders*, 298 Ga. at 193 (II).

[16] *Withers*, 246 Ga. at 159 (1); *accord Borders*, 298 Ga. at 193 (II).

[17] *See supra* note 14 & accompanying text.

question whether the City's Health Plan *is* a part of the plaintiffs' retirement plan. Indeed, in a nearly identical case—*Wilson v. City of East Point*[18]—decided after *Withers*, the Supreme Court of Georgia addressed certain life-insurance benefits that were provided to City of East Point employees at the time of their retirement, but were significantly reduced five years after the employees retired.[19] But despite the post-retirement reduction in these benefits, the *Wilson* Court noted that the City employees were receiving all the benefits they were entitled to under their *retirement plan*.[20] And in ruling for the City, our Supreme Court explained,

> [t]he cases cited by plaintiffs in support of their claims, e.g. *Withers . . .*, pertain to the constitutional vesting of retirement benefits, and are inapplicable here where the life[-]insurance benefits are provided

---

[18] 257 Ga. 426 (360 SE2d 254) (1987).

[19] *See id.* at 426 (explaining that "the City provided life insurance for its retired employees for specified coverages for different employees, in the amounts of $20,000 or $40,000, by paying 80% of the premium cost, which was funded as part of the City's budget, separately from the City's pension plans. The retired employees paid the remaining 20% of the premium cost through withholdings from their pension salary benefits. Approximately five years after the plaintiffs retired, the City reduced the payment of life insurance benefits to its retired employees, agreeing to pay all the premiums on the first $5,000 of life insurance coverage, while providing that retired employees could purchase additional coverage as desired through withholdings from their pension salary benefits").

[20] *See id.*

9

*separately and distinctly* from retirement benefits, where the plaintiffs were never promised a continuation of their life insurance benefits, and where the plaintiffs were placed on notice that those benefits were subject to change.[21]

So, like the life-insurance plan in *Wilson*, the City's Health Plan was provided "separately and distinctly" from the plaintiffs' retirement plan, which is not included in the record. Indeed, the plaintiffs were covered by the Health Plan even *before* they retired and merely elected to *continue* coverage after retirement, suggesting that the coverage was not solely a retirement benefit. Also, as in *Wilson* (and as explained more fully *infra)*, the City's Health Plan did not guarantee a continuation of health-insurance benefits. To the contrary, the plaintiffs were on notice that those benefits were subject to change. As a result, we fail to see a meaningful distinction between *Wilson* and the instant case, and thus, as in *Wilson*, the Impairment Clause restrictions detailed in *Withers* are simply inapplicable here.

Regardless, even if the Health Plan could be considered a part of the plaintiffs' retirement plans, and therefore, part of their employment contracts, the Impairment Clause was not violated because the plaintiffs never had a vested right in the health-

---

[21] *Id.* at 426-27 (emphasis supplied).

10

insurance benefits at issue.[22] As previously mentioned, Section IV, paragraph 4.5 of the City's 2016 Health Plan provides, in relevant part:

> [A]n Employee who retires from active employment on or after attainment of age 55 and with 20 or more years of service may elect to continue medical, dental, and prescription coverage under the [Health] Plan for himself/herself and his/her eligible Dependents until the retiree reaches the age of 65.

In this case, it is undisputed that the plaintiffs met the requirements to continue medical coverage under the foregoing provision when they retired and they all elected to do so. As a result, the plaintiffs contend the City violated the Impairment Clause when it amended the Health Plan to terminate their health-insurance benefits on January 1, 2017, because that amendment served to reduce, rather than increase, the benefits payable. And to be sure, under *Withers*, such an amendment to a retirement

---

[22] *See Seagraves*, 240 Ga. App. at 854-55 (2) (concluding that certain unused sick leave benefits provided for by ordinance were not part of the plaintiffs' retirement plan, but finding that, even if they were, the plaintiffs had no vested right to those benefits); *see also Polo Golf & Country Club Homeowners Ass'n, Inc. v. Cunard*, 306 Ga. 788, 793 (2) (a) (833 SE2d 505) (2019) ("Establishing a violation of Georgia's impairment clause, under either a theory of contractual impairment or a theory of retroactivity, requires the complaining party to show that a vested right is at stake.").

plan, without more, would violate the Impairment Clause.[23] But our inquiry does not end here.

As we have previously acknowledged, the Supreme Court of Georgia "had no difficulty in holding as long ago as 1954 that where a statute itself provides that it is subject to legislative change it may be amended, because no 'vested right' to unchanged benefits was created."[24] And here, Section XV, paragraph 15.1 of the

---

[23] *See Withers*, 246 Ga. at 159 (1) ("[T]he [I]mpairment [C]lause of our constitution precludes the application of an amendatory statute or ordinance in the calculation of the employee's retirement benefits if the effect of the amendment is to *reduce rather than increase the benefits payable.*" (emphasis supplied)); *Parrish v. Employees' Ret. Sys. of Ga.*, 260 Ga. 613, 613 (1) (398 SE2d 353) (1990) (same); *Adams*, 218 Ga. App. at 221 (1) ("It is clear that any attempt to reduce or terminate such benefits violates the prohibition in Art. I, Sec. I, Par. X of the Ga. Const. of 1983 against the impairment of contracts."); *see, e.g.*, *City of Athens v. McGahee*, 178 Ga. App. 76, 77-78 (1) (341 SE2d 855) (1986) (holding that because plaintiffs rendered services and made contributions to the city's retirement plan, the Impairment Clause of the state constitution prohibited the city from enacting legislation that eliminated severance pay that was paid upon retirement when such pay was an integral part of the entire retirement package).

[24] *Adams*, 218 Ga. App. at 222 (1); *see Pritchard v. Bd. of Comm'rs of Peace Officers Annuity & Ben. Fund of Ga.,* 211 Ga. 57, 57-60 (84 SE2d 26) (1954) (holding that the repeal of a statute that provided for certain disability payments to be made when an employee had served a required amount of time was not unconstitutional when the original legislation provided that "all rights and benefits provided herein shall be subject to future legislative change or revision and no beneficiary herein provided for shall be deemed to have any vested right to any annuities or benefits provided herein"); *see also Pulliam v. Ga. Firemen's Pension Fund*, 262 Ga. 411, 412 (1) (419 SE2d 918) (1992) ("The basis for the constitutional

12

Health Plan provides: "The Plan Sponsor reserves the right *to amend or modify all or any portion of the coverage* under this Plan *at any time* on a prospective basis, any such action being within *its complete and sole discretion*."[25] Thus, as with the provision providing continued coverage for retirees, the plaintiffs also agreed to this provision in the Health Plan at the time they entered into it. And Georgia appellate courts have repeatedly held that modification of a retirement benefit does not violate the Impairment Clause when the plain language of the same legislation or policy permits such modification.[26] So too here. The City's Health Plan unequivocally

---

vesting of rights in pensions is that the pension rights are property and cannot be taken. However, they are property because they become part of the contract of employment, and as this [C]ourt pointed out in *Pritchard*, the provision for subsequent amendment was part of the contract when appellant entered into it. We find *Pritchard* controlling.").

[25] (Emphasis supplied).

[26] *See Borders*, 298 Ga. at 193-94 (II) (approving of the trial court's statement that "[when] the legislation establishing a pension plan itself provides that the plan may be subject to modification or amendment, the participant does not acquire a vested contractual right in an unchanged plan and the plan may be amended without breaching employment contracts or violating the Impairment Clause," and holding that the modification of certain pension benefits did not violate the Impairment Clause when the legislation at issue provided for future change); *Pulliam*, 262 Ga. at 412 (1) (holding that the employer could suspend the employee's disability pension benefits when the legislation at issue provided that it was subject to change); *Pritchard,* 211 Ga. at 57-60 (holding that the repeal of a statute that provided for certain disability payments to be made when an employee had served a required

13

permits future modifications of its terms, and as a result, the trial court erred in granting the plaintiffs' motion for partial summary judgment and denying the City's first motion for summary judgment.

The plaintiffs make several arguments to support their position that the City is constitutionally barred from removing them from the Health Plan. But significantly, none of their arguments address whether the health-insurance benefits were provided separately and distinctly from their retirement plan. And as discussed *supra*, applying the Supreme Court's reasoning in *Wilson*, to the extent that the Health Plan is

---

amount of time was not unconstitutional when the original legislation provided that "all rights and benefits provided herein shall be subject to future legislative change or revision and no beneficiary herein provided for shall be deemed to have any vested right to any annuities or benefits provided herein"); *DeClue v. City of Clayton*, 246 Ga. App. 487, 491 (2) (540 SE2d 675) (2000) (holding that the employer did not violate the Impairment Clause by adopting new personnel policies because "[when] the contract terms themselves provide for subsequent amendment, modification, or termination, no 'vested' right under the contract is created"); *Seagraves*, 240 Ga. App. at 854-55 (2) (holding that a city employee did not have vested right in retirement plan benefits where retirement plan specifically provided that the city could terminate plan by adoption of an ordinance); *Adams*, 218 Ga. App. at 223 (1) ("Since the terms of their employment contracts provided that the terms of the plan could be modified or changed in the future, the participating employees never acquired a property right in the benefits like that acquired by the participating employees in *Withers* . . . . Under the plan, the Board had the right to modify benefits in the manner [that it did.]").

separate and distinct from their retirement plan, the Impairment Clause is inapplicable.[27] But even if it did apply, their arguments are meritless.

First, the plaintiffs argue that if an employee works and retires under a certain retirement plan, those benefits become vested and cannot be eliminated after retirement. But in support of this contention, the plaintiffs rely on a single case, which is easily distinguishable because the plan at issue in that case did not involve a provision allowing for the future modification of benefits.[28] Next, the plaintiffs contend that Georgia courts have not held that a retirement benefit can be eliminated for individuals who have already retired "except where a state statute explicitly provides that a benefit cannot vest." But we *have* held that when the "contract terms themselves provide for subsequent amendment, modification, or termination, no 'vested' right under the contract is created[;]"[29] and here, the City's Health Plan contained such a provision.

---

[27] *See supra* note 21 & accompanying text.

[28] *See McGahee*, 178 Ga. App. at 77-78 (1) (holding that because plaintiffs rendered services and made contributions to the city's retirement plan, the Impairment Clause of the state constitution prohibited the city from enacting legislation that eliminated severance pay that was paid upon retirement when such pay was an integral part of the entire retirement package).

[29] *DeClue*, 246 Ga. App. at 491 (2); *see supra* note 26.

The plaintiffs repeatedly assert that this case is distinguishable from other cases involving modification clauses because the employees in those cases had not already retired. But because the Health Plan provided that it could be modified or amended "at any time," we will not construe that provision to mean that modifications can only occur before an employee retires.[30] Furthermore, the plaintiffs provide no legal authority affirmatively holding that clauses providing for the subsequent modification of benefits are no longer valid once an employee retires. Additionally, the plaintiffs contend that adopting the City's position would mean that "no public employee could ever earn a vested retirement benefit" because every city, county, and state policy is subject to modification. And they further argue that granting an employer the right to modify benefits prevents them from vesting, thereby rendering them an unconstitutional gratuity. But despite these arguments, we are nevertheless bound by

---

[30] *See Freund v. Warren*, 320 Ga. App. 765, 768-69 (1) (740 SE2d 727) (2013) ("[N]o construction is required or even permitted when the language employed by the parties in the contract is plain, unambiguous, and capable of only one reasonable interpretation." (punctuation omitted)). Some of the plaintiffs' arguments appear to relate to a simple breach-of-contract claim, not involving the Impairment Clause. But as noted in their motion for partial summary judgment, the sole issue before the trial court was: "Is the City of Waycross liable for violating the [I]mpairment [C]lause of the Georgia Constitution by amending its Health Plan to eliminate coverage for the [p]laintiffs?" Thus, traditional breach-of-contract issues were not raised or ruled upon below. And routinely, this Court "refuses to review issues not raised in the trial court." *Pfeiffer v. Ga. Dep't of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002).

16

the numerous Georgia cases allowing government employers to modify retirement benefits if, as here, the statute or policy expressly permits them to do so.[31]

2. After erroneously denying the City's first motion for summary judgment, the trial court determined that the City's second motion for summary judgment, which addressed the plaintiffs' claims of promissory estoppel and quantum meruit, was moot. Those claims, however, have never been resolved by the trial court and were not at issue in this appeal. Under such circumstances, the City's second motion for summary judgment is not moot. As a result, we vacate the trial court's order denying the City's second motion for summary judgment as moot and remand the case for the court to address that motion on the merits.

For all these reasons, we reverse the trial court's grant of partial summary judgment to the plaintiffs and its denial of the City's first motion for summary judgment. We also vacate the trial court's order denying the City's second motion for summary judgment as moot, and remand the case for the court to consider that motion on the merits.

*Judgment reversed in part, vacated in part, and case remanded with direction.*

*Rickman and Brown, JJ., concur.*

---

[31] *See supra* note 26.